544 So.2d 572 (1989)
Bernis Wayne SHORT and Jacquelyn Short
v.
MOBIL OIL CORPORATION and Bott Equipment Company, Inc..
Bernis Wayne SHORT and Jacquelyn Short
v.
MOBIL OIL CORPORATION and Bott Equipment Company, Inc.
Nos. CA 88 0701, CA 88 0611.
Court of Appeal of Louisiana, First Circuit.
May 16, 1989.
*573 Edward F. Stauss, III, Baton Rouge, for plaintiff-appellant Bernis Wayne Short, et ux.
John S. White, Jr., Baton Rouge, for defendant-appellee Mobil Oil Corp.
Frank M. Coates, Jr., Baton Rouge, for defendant-appellee Bott Equipment Company, Inc.
Before CARTER, LANIER and LeBLANC, JJ.
LeBLANC, Judge.
Plaintiffs-appellants, Bernis and Jacquelyn Short, brought this suit for damages arising from personal injuries allegedly sustained by Mr. Short while disassembling a bulk storage facility loading rack located on the premises of Mobil Oil Corporation (Mobil) in Baton Rouge, Louisiana.[1] While Mr. Short was helping some other workers with the disassembly project, a pipe (loading arm) from the loading rack fell and hit Mr. Short's head.
At the time of this accident, Mr. Short was employed by Jetco Meter Service (Jetco). Jetco had contracted with Bott Equipment Company, Inc. (Bott) to provide the labor needed to perform the job of disassembling the rack and transporting parts of the rack to another city. Bott was the general contractor hired by Mobil to perform this work.
Plaintiffs filed this tort suit against Bott and Mobil. Plaintiffs alleged that the accident involving the loading rack was caused by a defect in the rack, Mobil's negligence and/or fault in failing to properly maintain the loading rack and the negligence and/or fault of Bott and Mobil in failing to properly instruct and/or supervise the work performed by Mr. Short.
Subsequently, both Bott and Mobil filed motions for summary judgment which were granted by the trial court. The trial court found that Bott established the necessary facts to prevail as Mr. Short's "statutory employer" under the two-contract theory. Therefore, the court found Mr. Short's exclusive remedy against Bott for his injuries is under the worker's compensation statute. See, La.R.S. 23:1032 and 1061. The trial court's summary judgment in favor of Mobil was based on its findings that 1) *574 Mobil established the accident was not caused by a defect but rather by the manner in which the rack was disassembled and 2) Mobil was not involved in supervision of the disassembly job and had no duty to supervise the job.
Plaintiffs appealed both of the trial court's summary judgments in favor of the defendants. These appeals have been consolidated by this court.
In this procedural context, defendants have the burden to show that no genuine issue of material fact exists and that they are entitled to judgment as a matter of law. La.Code Civ.P. art. 966.
In respect to plaintiffs' claim against Bott, plaintiffs argue that the trial court erred in finding Bott to be Mr. Short's statutory employer. They contend that the trial court erred in applying the "two-contract" statutory employer theory to the facts of this case. We find merit in plaintiffs' argument.
In order for Bott to prevail on summary judgment, it must be undisputed that Bott was Mr. Short's principal or statutory employer. Generally, the courts must follow the analysis set forth in Berry v. Holston Well Service, Inc., 488 So.2d 934 (La. 1986) to determine whether a statutory employment relationship exists. However, the employee's work has been held to be automatically within the trade, business or occupation of the principal where there is a particular two-contract relationship between the parties.
The "two-contract" statutory employer defense was briefly addressed in Berry, supra, at 936 n. 3:
[A]n owner contracts with a general contractor to do a job. The general contractor in turn contracts with a subcontractor for the "sub" to do the whole or a part of the total job contracted by the "general." Under this contractual relationship, the contract work of the "sub" has been held in decisions of the intermediate courts to be automatically within the trade, business or occupation of the "general."
This court also addressed the two-contract statutory employer defense in Davis v. Material Delivery Service, Inc., 506 So. 2d 1243 (La.App. 1st Cir.1987). In Davis, an owner of lime tank trucks executed a written contract with a transportation service, whereby the transportation service agreed to provide experienced drivers to operate the trucks on an "as needed" basis. Subsequently, the owner of the trucks orally contracted with a lime hydrate manufacturer to transport lime each time the need arose. One of the transportation service's drivers sustained personal injuries due to lime exposure. The driver sued the truck owner claiming the truck owner was liable in tort for his injuries. This court concluded that the two-contract statutory defense did not apply to the facts of the Davis case. This court found that the temporal requirements of the two-contract theory were not met since there was no particular general contract to perform specific work between the truck owner and the lime manufacturer at the time that the truck owner "subcontracted" with the transportation service. Thus, the two-contract defense did not shield the truck owner from tort liability.
In the present case, the affidavit of Mark Trumble, the owner of Bott, establishes that Bott and Jetco orally contracted for Jetco to perform the Mobil disassembly job prior to the time that Bott contracted with Mobil. Trumble's deposition testimony establishes that a Mobil representative called him and requested a "budgeted figure" for the disassembly job. Afterwards, he called Ronald Gilbert, owner of Jetco, to determine the price for which Jetco would perform the disassembly job. Trumble explained that he and Gilbert could not estimate Jetco's expenses for the job because they did not know the condition of the loading rack. Therefore, they determined a price that would be fair for the total Mobil job. Then, they agreed that if Bott was successful in obtaining the Mobil job, Jetco would provide the personnel needed for the Mobil job, Bott would pay for the cost of the equipment, hotel accommodations, meals and any other expenses and the profits of the Mobil job would be split equally between Bott and Jetco. Subsequently, *575 when Trumble contacted the Mobil representative and presented Bott's bid for the disassembly project, Bott and Mobil orally contracted for Bott to perform the job.
The facts of this case are similar to the facts of Davis. Although the contract between Bott and Jetco was conditioned upon Bott obtaining the Mobil job, there was no general contract to perform specific work between Mobil and Bott prior to the time that Bott contracted with Jetco. Therefore, we find that the temporal requirements of the two-contract theory are not met by the facts of this case.
Since the two-contract defense does not protect Bott from tort liability, the facts of the present case must be further analyzed according to the Berry three-tiered analysis. The Berry analysis requires an initial determination of whether the contract work is specialized or non-specialized. In order to make this determination, Berry directs that "courts should consider whether the contract work requires a degree of skill, training, experience, education and/or equipment not normally possessed by those outside the contract field." Berry, 488 So. 2d at 938. If the contract work is "specialized per se, as a matter of law the work is not a part of the principal's trade, business or occupation, and the principal is not the statutory employer of the specialized contractor's employees." Id. However, if the contract work is found to be non-specialized, "the inquiry shifts to a comparison of the principal's trade, business or occupation and the contract work to see if the latter can be considered a part of the principal's trade, business or occupation." Id. The Berry decision listed several factors which should be examined in order to resolve the factual issue of whether the contract work is part of the principal's trade, business or occupation:
1) "Is the contract work routine and customary? That is, is it regular and predictable?" Id.
The Berry court reasoned that general maintenance and repair work usually are within the scope of coverage of the worker's compensation statute while non-recurring or extraordinary repairs are usually not within the scope of coverage.
2) "Does the principal have the equipment and/or manpower capable of performing the contract work?" Id.
Pursuant to this question, the Berry court explained that the essential determination is whether the contract work is ordinarily performed by the principal's employees.
3) "What is the practice in the industry relative to the contract work? Do industry participants normally contract out this type of work or do they have their own employees perform the work?" Id.
Again, the primary focus is whether the contract work is ordinarily handled by the principal's employees.
The last tier of the Berry analysis requires the court to decide whether the principal is engaged in the type of work being performed by the contractor at the time of the alleged accident.
Applying the Berry analysis to the facts of the present case, we determine that the dismantling work performed by Jetco is not specialized. Ronald Gilbert, Bernis Short and another Jetco employee, Jonas Short, who is Bernis Short's brother testified that prior to the Mobil job, they had never disassembled a loading rack. Jetco's primary function was to service fueling equipment. The depositions of Ronald Gilbert, Bernis Short and Jonas Short established that none of the Jetco personel possessed any special skill, training, experience or education in disassembling loading rack equipment.
Furthermore, an examination of the appropriate factors set forth in Berry compels this court to find that the contract work performed by Jetco is not a part of Bott's trade, business or occupation. Trumble's deposition testimony establishes that Bott employees were primarily engaged in servicing fuel equipment at his place of business. On occasion, one of his employees would do some small service work in the field. He explained that the functions of his company were limited due to small manpower. When Bott contracted to perform a "big" job, Bott generally contracted *576 with Jetco to provide the services required because Bott did not have enough employees to handle the office service work along with field jobs that required several workers. Gilbert testified that Jetco had performed approximately a dozen jobs for Bott prior to the disassembly project. The prior jobs did not involve the dismantling of loading rack equipment. Trumble's testimony also indicates that Bott had to rent equipment in order for Jetco to perform the dismantling job. These facts clearly establish that the dismantling of loading rack equipment was not a routine and customary function of Bott's business and Bott did not have the equipment or the manpower capable of performing the dismantling job.
The evidence in this record does not establish whether companies that service fuel equipment ordinarily engage in dismantling loading rack equipment or whether this work is ordinarily performed by employees or contracted out by the service companies. However, even if we assume that these factual questions could be resolved in Bott's favor (i.e.to find that other fuel equipment service companies ordinarily have their own employees perform disassembly of loading rack equipment), we find that the contract work performed by Jetco was not part of Bott's business. We reach this conclusion because the other Berry factors discussed above so strongly weigh in favor of this finding. Therefore, we find that these unresolved factual issues regarding the usual practice in the industry do not raise a genuine issue of material fact. Since we have determined that the contract work performed by Jetco was not part of Bott's business, it is not necessary to address the last tier of the Berry analysis (i.e., whether Bott was engaged in the type of work being performed by Jetco at the time of the accident).
For the reasons expressed above, we reverse the trial court summary judgment in Bott's favor. Since Bott has not established that it is plaintiff's statutory employer, Bott is not entitled to judgment as a matter of law.
Regarding the trial court's summary judgment in favor of Mobil, plaintiffs argued that the summary judgment was improper because there were material issues of fact regarding whether Mobil representatives supervised the work performed by Jetco and whether the loading rack was defective.
Ordinarily, a property owner is not liable for the negligence of independent contractors who are performing work for the owner. However, this general rule of non-liability has two important exceptions: 1.) the owner may not avoid liability if the work undertaken by the independent contractor is inherently or intrinsically dangerous; 2.) the owner may be held liable if he exercises control over the contractor's methods of operation or gives express or implied authorization to an unsafe practice. Thompson v. Petrounited Terminals, Inc., 536 So.2d 504 (La.App. 1st Cir.1988), Williams v. Gervais F. Favrot Co., 499 So.2d 623 (La.App. 4th Cir.1986), writ denied, 503 So.2d 19 (1987), Ewell v. Petro Processors of Louisiana, Inc., 364 So.2d 604 (La.App. 1st Cir.1978), writ denied, 366 So.2d 575 (La.1979).
Plaintiffs do not contend that the dismantling of the loading rack was inherently or intrinsically dangerous. Nor do we find that this work was unavoidably dangerous. However, plaintiffs do urge that Mobil is liable for Mr. Short's injuries because Mobil personnel negligently supervised the disassembly project. They contend that the affidavits presented by Mobil raise an issue of material fact regarding Mobil's supervisory role.
We disagree. The depositions of all of the men who worked on the disassembly job clearly establish that although there were some Mobil personnel present at the Mobil site on the day that the job was performed, none of these Mobil employees were involved in supervising the dismantling project. The Mobil employees who were present were in Mobil offices and were not involved with the dismantling project. The depositions also clearly establish that Gilbert made the decisions regarding how the loading rack would be disassembled. *577 Since plaintiff did not present any evidence to contradict the deposition testimony presented by Mobil, we find there is no genuine issue regarding supervision of the disassembly job. When a motion for summary judgment is made and supported by documents, an opposing party may not rest on the mere allegations or denials of his pleadings. He must set forth specific facts to show the existence of a genuine issue for trial. Hope v. State, 525 So.2d 353 (La.App. 1st Cir.), writ denied, 531 So.2d 481 (La.1988).
In addition, plaintiffs argue that a genuine issue of material fact was raised regarding the condition of the loading rack (i.e., whether the loading rack, or a part of it, was defective). They argue that Mobil is liable for injuries caused by the defective rack pursuant to La.C.Code arts. 660 and 2317.
We find that the depositions of Trumble, Gilbert and Jonas Short establish that the accident was caused by the manner in which the loading rack was taken apart rather than by a defect of the rack. Their testimonies explained that certain valves and meters that were removed first from the rack provided structural support for other parts of the rack, including the loading arms. As the valves and meters were removed one by one, the structure weakened until, finally, some of the parts of the rack fell. One of the parts, a loading arm, struck Mr. Short as it fell to the ground.
Gilbert also testified that one of the beams in the loading rack twisted after some of the meters and valves had been removed. He further testified that the loading rack looked old and he thought the beam that twisted would not have done so if it had been newer. Plaintiffs contend that this part of Gilbert's testimony raises a significant issue regarding the condition of the rack.
We disagree. Gilbert's testimony regarding the age and strength of the beam in question was based on mere speculation. In his deposition testimony, he acknowledged that he did not have any particular training or experience in metallurgy or in dealing with loading rack equipment. He further stated that he did not have any factual basis for his statements regarding the strength of the beam. Therefore, we find that plaintiffs have failed to set forth specific facts showing the existence of a genuine issue for trial regarding a defect in the loading rack. Hope v. State, id. For these reasons, we find that the trial judge properly granted Mobil's motion for summary judgment.
Accordingly, the trial court's summary judgment in favor of Bott is reversed; the summary judgment in favor of Mobil is affirmed. One-half of the costs of this appeal are to be paid by plaintiffs and the other one-half of the costs are to be paid by Bott.
REVERSED IN PART AND AFFIRMED IN PART.
NOTES
[1] The loading rack had been used by Mobil for loading transports for selling gasoline and diesel.