842 So.2d 373 (2003)
Louise ALLEN,
v.
The STATE of Louisiana through the ERNEST N. MORIALNEW ORLEANS EXHIBITION HALL AUTHORITY and Scottsdale Insurance Company.
No. 2002-C-1072.
Supreme Court of Louisiana.
April 9, 2003.
*374 John G. Allelo, Baton Rouge, Holly A. Graphia, Kelly Y. Scott, Crawford & Lewis for Applicant.
George H. Jones, New Orleans, for Respondent.
Stevan C. Dittman, New Orleans, Alonzo T. Stanga, III, Metairie, for Louisiana Trial Lawyers Association (Amicus Curiae)
WEIMER, Justice.
We granted certiorari in this case to resolve a conflict in the courts of appeal with respect to whether the "two contract" theory of the statutory employer defense, *375 embodied in Louisiana Revised Statutes 23:1032 and 23:1061, contains a temporal requirement. More specifically, we granted writs to determine whether a defendant who seeks to invoke the "two contract" theory of the statutory employer defense must enter into a contract with a third party for the performance of specified work before entering into a subcontract for the performance of all or part of that work in order to avail itself of the statutory employer defense. Finding no basis for the imposition of a temporal requirement in either the language or the purpose of LSA-R.S. 23:1032 and 23:1061, we reverse the decision of the court of appeal and reinstate the judgment of the district court granting summary judgment in favor of defendant, Ernest N. Morial-New Orleans Exhibition Hall Authority (hereinafter "Convention Center") and its liability insurer, Scottsdale Insurance Company. In so doing, we expressly overrule the decisions of the courts of appeal that have jurisprudentially imposed a temporal requirement upon the "two contract" theory of defense.[1]

FACTS AND PROCEDURAL HISTORY
In 1983, Convention Center, through its managing body, New Orleans Public Facility Management, entered into a long-term contract with Aramark to provide catering services for conventions and other special events that Convention Center would routinely be sponsoring. This 1983 contract was later superceded in 1989 by a substantially similar contract between the parties. Approximately five years later, ACE Hardware Corporation ("ACE") contracted with Convention Center to provide a venue for its 1994 Annual Fall National Show. During the ACE convention, Louise Allen, an employee of Aramark, was allegedly injured on the premises of Convention Center while in the course and scope of her employment with Aramark. Allen filed suit for damages against Convention Center and its insurer, alleging that an unevenness between the floor of the building and the door of an elevator caused her to trip and fall. Allen has since recovered workers' compensation benefits from her direct employer, Aramark.
In response to Allen's petition, Convention Center and its insurer filed a motion for summary judgment, asserting tort immunity under the statutory employer doctrine. According to Convention Center, because it was Allen's statutory employer under the "two contract" theory of the statutory employer defense, Allen's exclusive remedy lies in receiving worker's compensation benefits.
At the hearing on Convention Center's motion for summary judgment in the district court, Allen's attorney appeared in court, but expressed no opposition to the court's granting Convention Center's motion. The district court judge entered judgment accordingly, dismissing Allen's suit against Convention Center and its insurer with prejudice. Allen timely filed a *376 motion for new trial, which the district court denied without a hearing.[2]
Allen subsequently appealed the district court's grant of summary judgment, alleging that Convention Center is barred from asserting the "two contract" theory of the statutory employer defense because it cannot satisfy the temporal requirements imposed upon LSA-R.S. 23:1032 and 23:1061 by the case law interpreting those statutes. More specifically, Allen argued that because Convention Center entered the principal contract with ACE after entering the Aramark "sub-contract" to provide catering services for the event, Convention Center is not Allen's statutory employer. Convention Center, on the other hand, argued that the temporal requirement of the "two contract" theory is neither statutorily nor jurisprudentially mandated; all that is required to satisfy the "two contract" theory of the statutory employer defense is a showing that the defendant entered a contract with a third party; that pursuant to that contract, work must be performed; and that in order for defendant to fulfill its contractual obligation to perform the work, defendant entered into a subcontract for all or part of the work to be performed.
The court of appeal, in a four-to-one decision, reversed the district court's grant of summary judgment and the attendant dismissal of Allen's case. Allen v. State, through the Ernest N. MorialNew Orleans Exhibition Hall Authority, 00-1552 (La.App. 4 Cir. 3/20/02), 814 So.2d 644. In so doing, the court of appeal followed its own precedent holding that the temporal requirement must be satisfied before a defendant is entitled to tort immunity under the "two contract" theory of defense. See, Taylor v. Broadmoor Corp., 623 So.2d 674, 676 (La.App. 4 Cir.1993), Crochet v. Westminster City Center Properties, 572 So.2d 720, 723 (La.App. 4 Cir.1990). Because the 1989 "sub-contract" with Aramark to provide catering services preceded the principal contract with ACE for its 1994 convention, the court of appeal held that Convention Center could not avail itself of the "two contract" theory of defense. In reaching this conclusion, the court of appeal expressly rejected the contrary holding of the Third Circuit Court of Appeal in Louviere v. Woodson Construction Company, 95-1075 (La.App. 3 Cir. 8/28/96), 679 So.2d 1013, writ denied, 96-2387 (La.12/6/96), 684 So.2d 929, which ruled that the temporal requirement was *377 not a necessary prerequisite for invoking the "two contract" theory of defense, but was instead a jurisprudentially imposed requirement that had been erroneously adopted by the courts of appeal based on dicta in this court's opinion in Berry v. Holston Well Services, 488 So.2d 934 (La. 1986).
We granted certiorari in this case to resolve the apparent split in the courts of appeal and to determine whether LSA-R.S. 23:1032 and 23:1061, in fact, impose a mandatory temporal requirement on the assertion of the "two contract" theory of the statutory employer defense. Allen, 02-1072 (La.6/21/02), 819 So.2d 341. Stated in its simplest terms, the issue we granted writs to resolve is whether, under the "two contract" theory of the statutory employer defense, the defendant must enter into a principal contract with a third party for the performance of specified work before entering into a subcontract for the performance of all or part of that work in order to avail itself of the statutory employer defense.

STANDARD OF REVIEW
Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La.1991). A court must grant a motion for summary judgment "if the depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law." LSA-C.C.P. art. 966(B). The summary judgment procedure is favored under our law. Id.

LAW AND ANALYSIS
Workers' compensation legislation was enacted in the early decades of the twentieth century, not to abrogate existing tort remedies that afforded protection to workers, but to provide social insurance to compensate victims of industrial accidents because it was widely believed that the limited rights of recovery under tort law were inadequate to protect these individuals.[3]Roberts v. Sewerage and Water Board of New Orleans, 92-2048 (La.3/21/94), 634 So.2d 341, 345, citing Boggs v. Blue Diamond Coal Co., 590 F.2d 655 (6th Cir.1979). The legislation reflects a compromise between the competing interests of employers and employees: the employer gives up the defense it would otherwise enjoy in cases where it is not at fault, while the employee surrenders his or her right to full damages, accepting instead a more modest claim for essentials, payable regardless of fault and with a minimum of delay. Id.
The legislatures that adopted the early workers' compensation acts feared that employers would attempt to circumvent the absolute liability those statutes imposed by interjecting between themselves and their workers intermediary entities which would fail to meet workers' compensation obligations. Frank L. Maraist and Thomas C. Galligan, Jr., The Employer's Tort Immunity: A Case Study in Post-Modern Immunity, 57 La.L.Rev. 467, 488 (1997). To assure a compensation remedy to injured workers, these legislatures provided that some principals were by statute deemed, for purposes of liability for workers' *378 compensation benefits, the employers of employees of other entities. Id. The legislative approaches to what is commonly referred to as the "statutory employer" doctrine varied.
Louisiana adopted a broad version of the statutory employer doctrine. The Louisiana Act expressly extends the employer's compensation obligation and its corresponding tort immunity to "principals."[4] Thus, LSA-R.S. 23:1061, which establishes the workers' compensation responsibility of a principal under the statutory employer doctrine, provides in pertinent part:
When any person, in this Section referred to as the "principal", undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person, in this Section referred to as the "contractor," for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him. [Emphasis added.][[5]]
The corollary provision, LSA-R.S. 23:1032, proclaims that the rights and remedies granted to an employee or his dependent under the Act shall be "exclusive of all claims, including any claims that might arise against his employer, or any principal." (Emphasis added.) "Principal" is defined as "any person who undertakes to execute any work which is a part of his trade, business, or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof." Id.
It has long been recognized that these provisions present alternative bases for imposing the workers' compensation obligation on entities that are not direct employers. See, 14 WEX S. MALONE & H. ALSTON JOHNSON, III, LOUISIANA CIVIL LAW TREATISE: WORKERS' COMPENSATION LAW AND PRACTICE § 364 at 173 (2002) ("[T]here are alternative bases for the compensation obligation in La. R.S. 23:1061, so as to make the availability of the compensation remedy broad enough to cover two different methods of doing business."). A "principal" (or statutory employer) for purposes of the Act is any person who undertakes to carry out any work which is a part of his trade, business or occupation by means of a contract with another (the "trade, business or occupation" defense); or, any person who has contracted to perform work and sub-lets any portion to another (the "two contract" theory of the statutory employer defense). Wex S. Malone, Principal's Liability for Workmen's Compensation to Employees of Contractor, 10 La. L.Rev. 25, 27 (1949). As to the "two contract" theory of the statutory employer defense, it is irrelevant whether the subcontractor's *379 work is part of the work ordinarily performed by the principal. In fact, the law presumes the contract to be within the trade, business or occupation of the principal. See, Berry, 488 So.2d at 936 n. 3 (and cases cited therein). The "two contract" defense applies when: (1) the principal enters into a contract with a third party; (2) pursuant to that contract, work must be performed; and (3) in order for the principal to fulfill its contractual obligation to perform the work, the principal enters into a subcontract for all or part of the work performed. Id.; Beddingfield v. Standard Construction Company, 560 So.2d 490, 491-492 (La.App. 1 Cir.1990); Aetna Casualty and Surety Company v. Schwegmann Westside Expressway, Inc., 516 So.2d 412, 413 (La.App. 1 Cir.1987).
In the present case, plaintiff urges, and the court of appeal held, that there is an additional requirement imposed upon the "two contract" defense. According to plaintiff, the phrase "had contracted to perform, and contracts with any person," found in §§ 1061 and 1032, imposes a temporal requirement upon the defense which mandates that a principal asserting the "two contract" theory must contract to do work before entering into a subcontract with a separate entity to perform all or part of that work.
The temporal requirement urged by the plaintiff and recognized by the court of appeal in this case first appeared in the jurisprudence in the case of Davis v. Material Delivery Service, Inc., 506 So.2d 1243 (La.App. 1 Cir.1987). In Davis, the court of appeal relied on a footnote in this court's decision in Berry, supra, to find that the contracts at issue in that case did not fit within the "two contract" scenario described in Berry. In Berry, we stated in footnote:
The discussion throughout the remainder of this opinion does not deal with what may be called the "two-contract" statutory employer defense. La. R.S. 23:1032, 1061. In that situation, an owner contracts with a general contractor to do a job. The general contractor in turn contracts with a subcontractor for the "sub" to do the whole or a part of the total job contracted by the "general."... See Lewis, [v. Exxon Corporation, 441 So.2d 192 (La.1983) ] ... (in dicta); Borne v. Ebasco Services, Inc., 482 So.2d 40 (La.App. 5th Cir.1986); Thornton v. Avondale Shipyards, Inc., 479 So.2d 7 (La.App. 5th Cir.1985); Brown v. Ebasco Services, Inc., 461 So.2d 443 (La.App. 5th Cir.1984), writ denied in part, 462 So.2d 1235 (La.1985); McCorkle v. Gulf States Utilities Co., 457 So.2d 682 (La.App. 1st Cir.1984); Jurls v. Lama Drilling Co., Inc., 457 So.2d 135 (La.App. 2d Cir.), writ denied 460 So.2d 1045 (La.1984); Certain v. Equitable Equipment Co., 453 So.2d 292 (La.App. 4th Cir.), writ denied 459 So.2d 535 (La. 1984); Richard v. Weill Construction Co., Inc., 446 So.2d 943 (La.App. 3d Cir.), writ denied 449 So.2d 1356 (La. 1984).
Berry, 488 So.2d at 936 n. 3. The Davis court drew upon this footnote, and the fact that the seven cases cited all "involved a particular general contract and a subsequent subcontract to do a part of the work included in the general contract," Davis, 506 So.2d at 1248, to conclude that a temporal requirement is imposed upon the defense, i.e., the principal must first contract to do work and then contract for the "sub" to do all or part of the work before the defense can be invoked.
Case law subsequent to Davis simply adopted its holding without further analysis or inquiry, resulting in a body of jurisprudence incorporating the temporal requirement as a mandatory component of the "two contract" theory of defense based *380 solely on dicta from this court's opinion in Berry.[6]See, e.g., Louisiana Workers' Compensation Corp. v. Genie Industries, 00-2034 (La.App. 4 Cir. 11/7/01), 801 So.2d 1161; Black v. McDermott International, Inc., 96-2062 (La.App. 4 Cir. 4/2/97), 692 So.2d 724, writ denied, 97-1026 (La.5/30/97) 694 So.2d 252; Peterson v. BE & K, Inc. of Alabama, 94-0005 (La.App. 1 Cir. 3/3/95), 652 So.2d 617, writs denied, 95-0831, 95-0818 (La.5/12/95), 654 So.2d 350; Taylor v. Broadmoor Corporation, 623 So.2d 674 (La.App. 4 Cir.1993); Croy v. Bollinger Machine Shop & Shipyard, 578 So.2d 945 (La.App. 1 Cir.), writ denied, 586 So.2d 532 (La.1991); Crochet v. Westminster City Center Properties, 572 So.2d 720 (La.App. 4 Cir.1990); Short v. Mobil Oil Corp., 544 So.2d 572 (La.App. 1 Cir.1989).
The only decision to depart from this line of case law is that of the third circuit in Louviere, supra.[7] In Louviere, the third circuit traced the temporal requirement of the "two contract" theory to its jurisprudential origins and then declined to follow that jurisprudence, recognizing that in civilian jurisdictions such as Louisiana, the sources of law are legislation and custom, and that legislation is superior to any other source of law. Louviere, 679 So.2d at 1016-1017.[8] In concluding that the language of § 1061 does not contain a temporal requirement, the third circuit relied heavily upon the statutory exegesis of Professor H. Alston Johnson, III, in the Louisiana Civil Law Treatise on workers' compensation. Johnson writes:
Reference to Section 1061 of the Act does not show great support for this theory [the temporal requirement]. While the section does speak in the past tense with respect to the "first" contract ("which he had contracted to perform"), it does not necessarily speak of a subsequent second contract ("and contracts with any person"). While the second phrase could mean that he contracts in the future after the first contract, it could just as well mean that he has a standing agreement with another person to provide labor, for example, on the jobs that he contracts to do for other people. In sum, the statutory exegesis does not appear to require a "temporal sequence" to the two contract theory.
Louviere, 679 So.2d at 1016, quoting 14 MALONE & JOHNSON, § 364, at 192-93 (1994).[9] Drawing upon this reasoning, the *381 court of appeal in Louviere concluded that there is no support in the language of the statute for the imposition of a temporal requirement and refused to jurisprudentially impose one.[10]
We agree with the premise of the Louviere court that the starting point for the interpretation of the requirements of section 1061 is the statute itself and not the dicta drawn from our footnote in Berry. In addition, we note that the Louisiana Civil Code lists the following rules for the interpretation of laws:
When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. [LSA-C.C. art. 9.]
When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law. [LSA-C.C. art. 10.]
The words of a law must be given their generally prevailing meaning. [LSA-C.C. art. 11.]
When the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole. [LSA-C.C. art. 12.]
See also, LSA-R.S. 1:4 which states:
When the wording of a Section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit.
Without question, we are bound by the language of the relevant statutes. However, where there are two interpretations of a statute, we must apply the interpretation which best conforms to the purpose of the law. LSA-C.C. art. 10. See also, Smith v. State, Department of Public Safety, 366 So.2d 1318, 1320 (La.1978); Edwards v. Daigle, 201 La. 622, 634, 10 So.2d 209, 212 (1942).
Applying the prescribed rules for the interpretation of laws, we conclude that the provisions of sections 1061 and 1032 impose no temporal requirement on the "two contract" defense. While it is true, as plaintiff points out, that the relevant section speaks in the past tense with respect to the "first" contract ("which he had contracted to perform") and then shifts to the present tense ("and contracts with any person"), it does not necessarily follow that this coupling of past and present tenses imposes a specific time sequence on the contracts. Indeed, had such a time sequence been intended, it can be presumed that the legislature would have so stated by inserting appropriate language ("which he had contracted to perform and [then] contracts with any person") to make clear its intent. In this instance, the coupling of past and present tenses more likely was intended to segregate the two contracts involved rather than to dictate the sequence in which they occur. Therefore, we agree with Professor Johnson that an equally plausible reading of the phrase "and contracts with any person" includes the situation where a principal has a standing agreement with another person to provide labor or services on jobs that he contracts to do for other people, and the phrase does not require a temporal sequence to the contracts.
The reading urged by plaintiffs, adhering strictly to the "niceties of grammar," and construing the use of past and present *382 tense forms of the word "contract," would, in this instance, produce an unreasonable result. See, e.g., Smith, 366 So.2d at 1320. In this regard, no reason has been advanced, nor can we fathom one, to support a finding that a principal who has a long-standing agreement with a supplier to provide labor and/or services in connection with jobs for which the principal contracts should be treated differently, for purposes of the compensation obligation, than one who enters separate contracts with the supplier after first contracting with a third party to perform certain work. There is no conceivable reason of policy to justify restricting the operation of the section to the latter situation and treating differently principals engaged in the exact same conduct except for the timing of their contracts.
The insertion of a temporal requirement does not further the public policy considerations that are the foundation of the workers' compensation legislation of this state. The insertion of a temporal requirement interjects an arbitrary requirement that severely impairs the stability of long-term service contracts such as the one at hand, certainly not an outcome that benefits workers involved in such contracts.
Moreover, we must give consideration to the definition of "principal" provided in LSA-R.S. 23:1032(2):
[T]he word "principal" shall be defined as any person who undertakes to execute any work which is a part of his trade, business, or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof. [Emphasis added.]
Regardless of the timing of the contracts between the principal contractor and the employer, if the injured employee is engaged in the principal's work "at the time of the injury," under the clear definition of "principal" the triggering event is "at the time of injury," not the timing of the contracts.
As LSA-R.S. 23:1061 and 23:1062 have two plausible interpretations, LSA-C.C. art. 10 instructs us to interpret these statutes to have a meaning which best conforms to the purpose of the law. As noted above, workers' compensation laws were enacted "to provide social insurance to compensate victims of industrial accidents because it was widely believed that the limited rights of recovery available under the general tort law was inadequate to protect them." Roberts, 634 So.2d at 345. As this court recognized in Berry, the purpose behind the statutory employer doctrine was "to prevent principals from evading their compensation responsibilities by interposing a `straw man' between them and those `employees' who are doing the whole or part or their trade." Berry, 488 So.2d at 936. A worker should be protected as to the compensation obligation owed to him, and the principal should not be allowed to insulate itself through a contracting scheme. When LSA-R.S. 23:1061 and 23:1032 are interpreted as not having a temporal requirement, the purpose underlying the workers' compensation act remains unscathed. The worker remains protected with a claim for medicals, rehabilitation, and compensation, regardless of fault. In return, the employer is forced to fulfill the compensation obligation owed to his employee and cannot use an elaborate contractual scheme to evade this responsibility.
We are mindful of our obligation, in construing the provisions of the Workers' Compensation Act, that "every presumption should be on the side of preserving the general tort or delictual rights of an injured worker against the actual wrongdoer, *383 in the absence of explicit statutory language limiting or excluding such rights," Roberts, 634 So.2d at 346. However, this presumption should not be applied to frustrate the basic purpose of the workers' compensation actto provide workers' compensation benefits to injured workers and thereby avoid the pitfalls and defenses of the tort system. Nor should the presumption be applied when no conceivable reason of policy for the temporal requirement exists.

CONCLUSION
We reject the holding of the court of appeal to the effect that LSA-R.S. 23:1032 and 23:1061 establish a temporal requirement for asserting the "two contract" theory of the statutory employer defense. Pursuant to the statutes, in order to raise the "two contract" defense, a defendant must establish only that: (1) it entered into a contract with a third party; (2) pursuant to that contract, work must be performed; and (3) in order for the defendant to fulfill its contractual obligation to perform the work, the defendant entered into a subcontract for all or part of the work performed.
Upon review of the contracts between ACE and the Convention Center and between the Convention Center and Aramark, it is clear that the articulated requirements for asserting the "two contract" defense have been satisfied in this case. Finding no basis for the imposition of an added temporal requirement in either the language or the purpose of LSA-R.S. 23:1032 and 23:1061, we therefore reverse the decision of the court of appeal and reinstate the judgment of the district court granting summary judgment in favor of the Convention Center and its insurer, being satisfied that defendant has met its burden of proving that it was the statutory employer of plaintiff and is therefore entitled to tort immunity under the "two contract" theory of the statutory employer defense.

DECREE
Accordingly, for the reasons expressed above, the decision of the court of appeal is reversed and the judgment of the district court granting summary judgment in favor of defendants is reinstated.
CALOGERO, C.J., dissents and assigns reasons.
CALOGERO, Chief Justice, dissents and assigns the following reasons:
I believe that the temporal requirement is a necessary component of the statutory employer "two-contract" theory of defense. This result is compelled, not by this court's dicta in Berry v. Holston Well Services, although that footnote supports imposition of a temporal requirement, but by the plain language of the relevant statutes and established rules of interpretation in workers' compensation cases. The majority opinion gives proper deference to the rules of statutory construction set forth in the Civil Code. The majority and I differ, however, as to the legally proper outcome commanded by application of these rules.
Civil Code article 9 provides that "[w]hen a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." The relevant statutes clearly and unambiguously set forth a temporal requirement in connection with the "two-contract" theory of defense. The general meaning of the phrase "had contracted to perform" denotes that the agreement took place in the past, while the phrase "and contracts with any person" connotes the present tense. See La. Rev. Stats. *384 23:1032, 1061. In the normal grammatical context, when one places a past-tense phrase sequentially before a present-tense phrase, it is contemplated that the one action precedes the other. While it is also plausible, as the majority holds, that this coupling of past and present tenses was intended merely to segregate the two contracts, we are bound to construe these statutes "on the side of preserving the general tort or delictual rights of an injured worker against the actual wrongdoer, in the absence of explicit statutory language limiting or excluding such rights." Roberts v. Sewerage & Water Bd., 92-2048, p. 8 (La.3/21/94), 634 So.2d 341, 346.
Finding a temporal requirement implicit in the plain language of §§ 1032 and 1061 does not lead to the absurd consequences suggested by the majority when one examines the "two-contract"defense in the overall context of the statutory employer scheme. First of all, the benevolent policy of ensuring that injured workers receive compensation benefits is not implicated in the statutory employer situation. Plaintiff has already received benefit payments from her direct employer, Aramark, and this is generally what happens, considering that the Act requires employers to secure compensation to their employees. "It is one of the anomalies of workers' compensation law that an entire group of persons or entities who may never actually pay compensation to a claimant, or even be asked to do so, nonetheless enjoy complete immune from suit in tort by such a claimant." Malone & Johnson, 14 Louisiana Civil Law Treatise, Workers' Compensation Law and Practice, § 364, at 160 (4th ed.1994).
Importantly, contrary to the majority's assertion, finding a temporal requirement implicit in the "two-contract" theory does not penalize a principal who chooses to conduct its business through a long-standing agreement rather than a series of contracts. This type of principal may be able to establish statutory employer immunity under a separate theory set forth in R.S. 23:1032: the trade, business, or occupation defense. The legislature chose to make the statutory employer concept "broad enough to cover two different methods of doing business." Malone & Johnson, supra § 364, at 173. The "two-contract" theory is traditionally implicated where a general contractor, with a contract to perform a job for an owner, contracts thereafter with a subcontractor for the "sub" to do all or a part of the job contracted by the "general." Berry v. Holston Well Servs., 488 So.2d 934, 939 (La.1986). The trade, business, or occupation defense, on the other hand, was designed to prevent principals from escaping their workers' compensation responsibilities by inserting "straw men" between them and those "employees" who were performing the whole or part of the principal's trade, business, or occupation. Berry, 488 So.2d at 936. The legislature's use of the disjunctive "or" in §§ 1032 and 1061 shows the separateness of the two defenses: when the principal "undertakes to execute any work, which is a part of his trade business or occupation or which he had contracted to perform, and contracts with any person...."
It is worth noting that the legislature has twice amended the trade, business, or occupation theory of defense since its inception to statutorily overrule decisions of this court.[1] On the other hand, the "two-contract" *385 theory has remained virtually unchanged since its 1914 enactment, despite the numerous appellate court cases limiting the availability of the defense through the imposition of the temporal requirement. In the absence of legislative guidance to the contrary, we are bound to construe the relevant statutes as written and according to the history and purpose of tort and workers' compensation laws. Accordingly, I dissent from the majority opinion, and would find that the court of appeal was correct in reversing the district court's grant of summary judgment in favor of Convention Center.
NOTES
[1] See, e.g., Louisiana Workers' Compensation Corp. v. Genie Industries, 00-2034 (La.App. 4 Cir. 11/07/01), 801 So.2d 1161; Black v. McDermott International, Inc., 96-2062 (La. App. 4 Cir. 4/2/97), 692 So.2d 724, writ denied, 97-1026 (La.5/30/97), 694 So.2d 252; Peterson v. BE & K, Inc. of Alabama, 94-0005 (La.App. 1 Cir. 3/3/95), 652 So.2d 617, writs denied, 95-0831, 654 So.2d 350, 95-0818 (La.5/12/95), 654 So.2d 350; Taylor v. Broadmoor Corporation, 623 So.2d 674 (La. App. 4 Cir.1993); Croy v. Bollinger Machine Shop & Shipyard, 578 So.2d 945 (La.App. 1 Cir.1991), writ denied, 586 So.2d 532 (La. 1991); Crochet v. Westminster City Center Properties, 572 So.2d 720 (La.App. 4 Cir. 1990); Short v. Mobil Oil Corporation, 544 So.2d 572 (La.App. 1 Cir.1989); Davis v. Material Delivery Service, Inc., 506 So.2d 1243 (La.App. 1 Cir.1987).
[2] Convention Center contended in the court of appeal, and now contends in this court, that pursuant to LSA-C.C.P. art.2085, Allen is barred from appealing because she acquiesced in the district court's grant of summary judgment and the accompanying dismissal of her action. Louisiana Code of Civil Procedure article 2085 provides that an appeal cannot be taken by a party who "voluntarily and unconditionally acquiesced in a judgment rendered against him." The court of appeal found that Allen did not clearly demonstrate an intention to abandon her right to appeal, citing Schneider v. Mayo, 94-527 (La.App. 3 Cir. 12/7/97), 647 So.2d 606, writ denied, 95-0027 (La.2/17/95, 650 So.2d 254). 650 So.2d 254, and Brewster v. Santos, 94-1148 (La.App. 4 Cir. 11/30/94), 646 So.2d 486. Because appeals are favored in law, this court has articulated a high standard for finding that a party has acquiesced in a judgment for purposes of LSA-C.C.P. art.2085. See e.g., Succession of Franz, 238 La. 608, 612, 116 So.2d 267, 268, ("[B]efore we can say that an appellant has lost his right of appeal, there must be an unconditional, absolute, and voluntary acquiescence in the judgment by the appellant, who must have intended to abandon his right."). In this case, the fact that Allen's attorney voiced no objection to the district court's grant of summary judgment could signify that he saw the judgment as inevitable and was planning to move for an immediate appeal. The fact that the attorney subsequently filed a timely motion for new trial supports the inference that he did not wish to stand idly by and allow the court to dismiss his client's case with prejudice. We therefore find no error in the court of appeal's resolution of this issue.
[3] Due in large part to the "unholy trinity" of judicially-created employer defenses (assumption of the risk, contributory negligence and the fellow servant rule), less than 25 percent of injured workers recovered compensation for work-related accidents. Roberts, 634 So.2d at 345.
[4] The principal's responsibility for the payment of workers' compensation benefits has been a part of our workers' compensation law since its inception in 1914. La. Acts.1914, No. 20, § 6(1), 6(2). In 1950, this court held that the language and purpose of LSA-R.S. 23:1032, when considered with § 1061, established the corresponding tort immunity for principals, Thibodaux v. Sun Oil Co., 218 La. 453, 49 So.2d 852 (1950), but this immunity was not codified until the statute was amended in 1976. La. Acts 1976, No. 147, § 1.
[5] The quoted provisions are those that were in effect at the time of the alleged injury and encompass the law that applies. See, Bruno v. Harbert International, Inc., 593 So.2d 357, 360 (La.1992). The statute was amended in 1997. La Acts 1997, No. 315, § 1.
[6] The Berry footnote acknowledges that the "two contract" theory was not at issue; therefore, our comments regarding this defense are clearly dicta.
[7] Prior to Louviere, the third circuit had adopted the view of the courts cited above, that the temporal requirement was necessary to the two contract defense. See, Burleigh v. South La. Contractors, 525 So.2d 87, 91 (La. App. 3d Cir.1988) ("A principal must first contract to do work and then contract for another to do all or part of that work.").
[8] The court of appeal quoted from the reasoning of Judge H. Ward Fontenot of the 38th Judicial District Court who said:

[R]ecognizing that there are two methods by which a principal may become a statutory employee and that is the Berry test or the two contract method; and relying upon the statute, there is no temporal requirement in the statute. It would really be a strain ... to say that one [contract] has to come before the other. That's a judge made requirement. I admit that there are some appella[te] panels who have inserted this requirement, but under our civilian method of statutory construction, I see no such requirement.
[9] The quoted paragraph was deleted from the latest edition of the Civil Law Treatise, published in 2002. Nevertheless, in that edition, the author reiterates, albeit in a more abbreviated fashion, that the group of cases that "purport to find a temporal requirement in the two-contract basis for tort immunity" rest on "dubious statutory foundation." 14 MALONE & JOHNSON, § 364 at 173-74 (2002).
[10] For a rejoinder to Professor Johnson's comments, see Judge Cooks' dissent in Louviere.
[1] The comments to § 1061 indicate that the 1989 amendments were intended to modify Berry, and the 1997 amendments were intended to overrule Berry and Kirkland v. Riverwood International, Inc., 95-1830 (La.9/13/96), 681 So.2d 329. Both amendments increase the availability of the statutory employer defense while correlatively broadening compensation liability.