# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 16-358

QUIANA LORDEN, ET AL.

VERSUS

PARAMOUNT HEALTHCARE CONSULTANTS, LLC, ET AL.

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
THIRTY-SIXTH JUDICIAL DISTRICT COURT
PARISH OF BEAUREGARD, NO. C-2014-0578, DIV. A
HONORABLE MARTHA ANN O'NEAL, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## D. KENT SAVOIE
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of James T. Genovese, Phyllis M. Keaty, and D. Kent Savoie, Judges.

**REVERSED AND REMANDED**

**Lawrence Blake Jones**
**Stephen F. Armbruster**
**Scheuermann & Jones, LLC**
**701 Poydras Street, Suite 4100**
**New Orleans, LA 70139**
**(504) 525-4361**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
 **Quiana Lorden**
 **Christopher Lorden**
 **Thaddrick Johnson**

**James J. Hautot**
**Judice & Adley**
**Post Office Drawer 51769**
**Lafayette, LA 70505-1769**
**(337) 235-2405**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
 **Paramount Healthcare Consultants, LLC**
 **Merryville Properties, LLC**
 **Merryville Rehabilitation, LP**

**Jennifer L. Simmons**
**Renee S. Melchiode**
**Erin M. Murphy**
**Melchiode Marks King, LLC**
**639 Loyola Ave., Suite 2550**
**New Orleans, LA 70113**
**(504) 336-2880**
**COUNSEL FOR INTERVENOR/APPELLANT:**
 **Zurich American Insurance Company**

**Ronald Cole Richard**
**Richard Law Firm**
**900 Ryan Street, Ste 400**
**Lake Charles, LA 70601**
**(337) 494-1900**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
 **Quiana Lorden**

**SAVOIE, Judge.**

This matter involves an appeal of a summary judgment finding that Defendant Merryville Rehabilitation, LP (Merryville) was immune from Plaintiffs' tort claims under Louisiana workers' compensation law. For the following reasons, we reverse and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of Plaintiff Quiana Lorden's (Lorden's) alleged slip and fall that occurred on September 18, 2013, at Merryville. At the time of the incident, Lorden was a direct employee of Southern Care Hospice (Southern Care) and was assisting a hospice patient residing at Merryville. Lorden's petition alleges that she "was assisting the patient following a shower that the patient had completed[,]" and that, following the shower, "there was a great deal of water on the floor in the patient's room." Therefore, upon Lorden's request, a housekeeper employed by Merryville was sent to clean the wet floor. According to Lorden, while the housekeeper was cleaning the floor, he "spread the water to formerly dry areas of the room." Lorden alleges that she then "stepped on an area of the floor that she previously knew to be dry," slipped and fell, and landed on her knee.

Lorden, along with her husband Christopher Lorden, individually, and on behalf of her minor child, Thaddrick Johnson, filed a tort action against Merryville, Merryville Properties, LLC (Merryville Properties), and Paramount Healthcare Consultants, LLC ("PHC").

Zurich American Insurance Company (Zurich), which is Southern Care's workers' compensation insurer, intervened in the action, alleging it had paid

workers' compensation indemnity benefits to, or on behalf of Lorden, and that it was entitled to reimbursement.

Each of the defendants filed motions for summary judgment. Merryville sought dismissal on the basis that it was Lorden's statutory employer under La.R.S. 23:1061 and therefore immune from Plaintiffs' tort claims; Merryville Properties sought dismissal, arguing that it was only responsible for leasing property to Merryville; and PHC sought dismissal because it did not own or manage the property at issue. Plaintiffs opposed only Merryville's motion.

A hearing was held on October 26, 2015. The trial court granted each of the defendants' motions and dismissed Plaintiffs' and Zurich's claims. As to Merryville, the trial court found that Lorden was "in the course and scope of her employment at the time this happened" and, therefore, dismissed Plaintiffs' claims.

Plaintiffs appeal only the summary judgment dismissing their claims against Merryville. They argue that material issues of fact exist as to whether Merryville was Lorden's statutory employer under La.R.S. 23:1061 and/or a borrowing employer under La.R.S. 23:1031; and, therefore, a summary judgment finding that Merryville is immune from Plaintiffs' tort claims is precluded.

Zurich also appeals the trial court's dismissal of its claims against Merryville, arguing that it was error for the trial court to dismiss its claims when the motion for summary judgment did not address its claims and when material issues of fact exist as to whether Merryville is Lorden's statutory employer and/or borrowing employer.

## STANDARD OF REVIEW:

Louisiana Code of Civil Procedure Article 966 (A)(2) explains that the "summary judgment procedure is designed to secure the just,

speedy, and inexpensive determination" of actions. Further, "[t]he procedure is favored and shall be construed to accomplish these ends." *Id*. A summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B)(2).

Although the moving party bears the burden of proof on the motion for summary judgment, the movant is not required to negate all essential elements of the adverse party's claim, action or defense if he or she will not bear the burden of proof at trial on the matter at issue. La.Code Civ.P. art. 966(C)(2). Rather, the movant is required "to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." *Id*. In turn, if the adverse party does not produce sufficient factual support to establish that he or she will be able to satisfy his or her evidentiary burden of proof at trial, there is no genuine issue of material fact. *Id*. On review, an appellate court considers a summary judgment *de novo*, "using the same criteria that govern the trial court's determination of whether summary judgment is appropriate, *i.e.* whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. *Reynolds v. Bordelon*, 14-2371, p. 3 (La.6/30/15), 172 So.3d 607, 610.

*Blanks v. Entergy Gulf States La., LLC*, 15-1094, pp. 3-4 (La.App. 3 Cir. 4/6/16), 189 So.3d 599, 601 (footnote omitted).[1]

## STATUTORY EMPLOYER

Appellants take issue with the trial court granting Merryville's motion for summary judgment because it found that there was no evidence indicating Lorden was not within the course and scope of her employment at the time of the incident. While we agree that this specific finding by the trial court is not determinative of

---

[1] As in *Blanks*, 189 So.3d at 601, n.2, we note that:

While Article 966 was amended by 2015 La. Acts No. 422, § 1, and its provisions became effective on January 1, 2016, we consider this matter under the provisions of the Louisiana Code of Civil Procedure as they existed at the time of the trial court's consideration. *See* 2015 La.Acts. No. 422, § 2 (providing that: "The provisions of this Act shall not apply to any motion for summary judgment pending adjudication or appeal on the effective date of this Act.").

the issue of Merryville's tort immunity, we review the record *de novo* to determine whether it supports a summary judgment dismissal of the claims against Merryville.

Merryville argues that it is immune from Plaintiffs' tort action because it is Lorden's statutory employer as contemplated by La.R.S. 23:1061, which states in part as follows (emphasis added):

> A. (1) Subject to the provisions of Paragraphs (2) and (3) of this Subsection, when any "principal" as defined in R.S. 23:1032(A)(2)[2], undertakes to execute any work, which is a part of his trade, business, or occupation and contracts with any person, in this Section referred to as the "contractor", for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, **the principal, as a statutory employer, shall be granted the exclusive remedy protections of R.S. 23:1032** and shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him . . . .
>
> (2) A statutory employer relationship shall exist whenever the services or work provided by the immediate employer **is contemplated by or included in a contract between the principal and any person or entity other than the employee's immediate employer**.

Merryville argues that it is a statutory employer under La.R.S. 23:1061(A)(2), which is often called the "'two contract' defense." *Allen v. State ex. rel. Ernest N. Morial-New Orleans Exhibition Hall Auth.*, 02-1072, p. 8 (La. 4/9/03), 842 So.2d 373, 379.

> The "two contract" defense applies when: (1) the principal enters into a contract with a third party; (2) pursuant to that contract, work must be performed; and (3) in order for the principal to fulfill its contractual obligation to perform the work, the principal enters into a subcontract for all or part of the work performed.

---

[2] Louisiana Revised Statutes 23:1032(A)(2) defines "principal" as "any person who undertakes to execute any work which is a part of his trade, business, or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof."

*Id.*

Merryville suggests that the two contracts establishing it as Lorden's statutory employer are (1) an agreement between the hospice patient and Merryville, which it argues is established by the affidavit of Shandel Hambrick, who is an Assistant Administrator of Merryville, and the exhibits attached to the affidavit, and (2) a written "Skilled Nursing Facility Contract" between Southern Care and Merryville, dated March 25, 2003. Merryville argues that these contracts establish that it subcontracted with Southern Care for the performance of certain services it had agreed to provide to the hospice patient and, therefore, it is a statutory employer of Southern Care's employees, including Lorden, under La.R.S. 23:1061(A)(2).

Appellants argue there are material issues of fact regarding the relationship between Merryville and Southern Care, their duties, and whether Merryville had any obligation to provide hospice services to its patients, thereby precluding a summary judgment finding that Merryville is a statutory employer.

Our interpretation of the contracts at issue is governed by the following principles:

> "[W]hen a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law." "Interpretation of a contract is the determination of the common intent of the parties." The reasonable intention of the parties to a contract is to be sought by examining the words of the contract itself, and not assumed. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." Common intent is determined, therefore, in accordance with the general, ordinary, plain and popular meaning of the words used in the contract. Accordingly, when a clause in a contract is clear and unambiguous, the letter of that clause should not be disregarded under the pretext of pursuing its spirit, as it is not the duty of the courts to bend the meaning of the words of a

5

contract into harmony with a supposed reasonable intention of the parties. Most importantly, a contract "must be interpreted in a common-sense fashion, according to the words of the contract their common and usual significance."

*Prejean v. Guillory*, 10-740, pp. 6-7 (La. 7/2/10), 38 So.3d 274, 279 (citations omitted).

A contract is considered ambiguous on the issue of intent when either it lacks a provision bearing on that issue, the terms of a written contract are susceptible to more than one interpretation, there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed.

*Campbell v. Melton*, 01-2578, p. 6 (La. 5/14/02), 817 So.2d 69, 75.

Hambrick's affidavit states as follows:

to the best of her knowledge[,] every patient or their representative, prior [to] or at the time of admission to Merryville, signs a Merryville Rehabilitation Center Admissions Agreement and a Terms and Conditions agreement, which outlines the care and treatment Merryville will provide all patients while residing at Merryville. (Exhibit 1 & 2)

Attached as "Exhibit 1" to the affidavit is an *unsigned* and *undated* "Admission Agreement" that includes the following language:

### SKILLED NURSING
For residents who meet criteria for Skilled Nursing services, Medicare will pay 100% of the daily room rate plus all covered ancillary charges for the first 20 days. The resident will pay a portion of the charges for the 21st through the 100th day of the Medicare coverage. The resident's portion is established by the government.

### NON-SKILLED SERVICES
For residents who do not qualify for Skilled Nursing services, the following provisions apply.

In consideration of payment of the daily rate described above and compliance with all the terms and conditions . . . , the Facility agrees to accept the Resident and render care and services in accordance with the terms and conditions set forth therein and on the pages to follow.

6

An *unsigned* and *undated* document entitled "Terms and Conditions" is attached as "Exhibit 2" to Hambrick's affidavit, and it includes the following language:

Merryville Rehabilitation Center agrees to:

1. Admit Resident with Physician's order and the execution of this Agreement . . . and to assist in obtaining services of a physician . . . .
2. Arrange for the prompt transfer of resident to a hospital room upon Physician's order . . . .
3. Maintain written records of all financial transactions with the resident . . . .
4. Furnish room, board, nursing care, and such services as may be required for the health, safety, good grooming and well being of Resident . . . .
5. Provide required assistance in daily living.
6. Obtain and administer such medications as may be prescribed . . . .
7. Provide an activities program . . . .
8. Furnish bed linens and Resident gowns as required . . . .

It is undisputed that Merryville was providing services to the hospice patient in this case. However, Hambrick's affidavit and the attached exhibits are insufficient to establish the extent of any agreement between the patient and Merryville, or the services Merryville had agreed to provide the patient. The affidavit does not state that the documents attached to it were the same documents that the patient in the instant case signed, or the same documents that every patient signs. In addition, there is no evidence indicating that the patient in this case was receiving skilled nursing services or non-skilled nursing services; therefore, it is unknown whether a terms and conditions document applied, even if the documents attached to the affidavit reflected Merryville's agreement with the hospice patient in this case.

7

We next review the "Skilled Nursing Facility Contract" between Southern Care and Merryville, dated March 25, 2003. It contains the following language (emphasis added):

> WHEREAS, [Southern Care] administers a program of **palliative and supportive services**, including interdisciplinary services **to meet the physical, psychological, social, and spiritual needs of terminally ill persons and their families**; and
>
> WHEREAS, [Merryville] is a duly licensed, skilled nursing facility **providing nursing facility services** to its residents and desires to make hospice services available to such residents[.]
>
> . . . .
>
> NOW THERFORE, [Merryville] and [Southern Care] . . . do hereby agree each with the other as follows:
>
> 1.     Eligible Patients
>
> [Merryville] agrees to admit hospice patients referred to it by [Southern Care] for **respite and long term care**, including those who may be eligible for hospice Medicare and/or Medicaid reimbursement. This will, of course, be subject to [Merryville's] usual admission criteria and the availability of beds in the Facility.
>
> [Southern Care] **agrees to provide Hospice services to residents** of [Merryville] **who have voluntarily elected to receive Hospice care and who have complied with the admission criteria of Hospice** and state and federal laws pertaining to the provision of Hospice services.
>
> 2.     Services to be Furnished by [Merryville]
>
> **[Merryville] will provide** the resident of [Merryville], who is a Hospice patient with the **nursing, dietary, housekeeping, and other services normally offered by a licensed nursing facility**, depending on the level of care required by the patient which [Merryville] would have provided in the absence of a Hospice program and which are subject to the patient's Hospice plan of care. These services include, but are not limited to, room and board, medications not related to the management of the terminal illness, nursing and personal care as provided to other residents of the Facility, and the Facility's normal

8

program of therapies and activities **unrelated to the patient's terminal illness.**

With respect to the management of the patient's terminal illness, [Merryville] agrees to:

> A. Notify Hospice in the event of changes in the patient's condition;
> B. Provide usual and customary services of the Facility subject to the Hospice plan of care for such patient; and
> C. Make records pertaining to care and services furnished by the Facility to a Hospice patient available to Hospice.

. . . .

3. Services to Be Provided by [Southern Care]

> A. Education: [Southern Care] will conduct such inservice education for [Merryville's] staff as is agreed upon by [Southern Care] and [Merryville] to educate the staff about the activities, philosophy, and services of [Southern Care]. . . .
>
> B. Physicians: The Hospice patient's personal physician shall be responsible for the direct medical care of the patient . . . .
>
> C. Care Plans: [Southern Care] will provide [Merryville] with a copy of any existing care plan upon the admission of a Hospice patient to [Merryville]. . . . **The Hospice plan will specify which services are related to the patient's terminal illness, and therefore, will be furnished by Hospice**.
>
> D. Family Services and Bereavement Care: [Southern Care] agrees to provide counseling to family members to assist them in adjusting to the patient's terminal condition . . . .

. . . .

6. Medications and Supplies

[Southern Care] shall supply all drugs, pharmaceuticals and biological (e.g. oxygen) **pertaining to the management of the terminal illness** of the resident and which are specified in the Hospice plan for an eligible resident. . . . [Merryville] shall provide medical equipment and medical supplies to Hospice

patients **that are ordinarily supplied to [Merryville] patients**[.]

. . . .

9.      Retention of Responsibility:

[Merryville] agrees that [Southern Care] retains the responsibility for **planning, coordinating, prescribing and documenting hospice services** and care on behalf of the patient and the family of the patient, and [Merryville] agrees that [Southern Care] retains responsibility for **appropriate hospice care training of the personnel** who provide the care under this Agreement.

. . . .

12.     Indemnification

[Southern Care] shall not be liable under any contract or obligations of [Merryville], except as otherwise provided pursuant to this Agreement, or for any act or omission of the [Merryville]. . . .

[Merryville] shall not be liable under any contracts or obligations of [Southern Care], except as otherwise provided pursuant to this Agreement, or for any act or omission of [Southern Care]. . . .

It is expressly understood that both parties to this Agreement are independent contractors and engage in the operation of their own respective businesses. Neither party is, or is considered as, an agent of the other party for any purpose whatsoever. Neither party has authority to enter into contract for the other party or make any warranties or representations on behalf of the other party. Nothing in this Agreement shall be construed to establish a relationship of copartners or joint ventures between the parties.

The language in the "Skilled Nursing Facility Contract" indicates that Southern Care and Merryville agreed to provide two different sets of services to Merryville residents who are eligible to receive, and have elected to receive, hospice services. Southern Care provides hospice services, which are services related to the patient's terminal illness that are specified in the patient's Hospice

10

plan. Merryville, on the other hand, provides nursing facility services, which includes services normally offered by a licensed nursing facility that are unrelated to the patient's terminal illness and that are not specified in the patient's hospice plan.

However, there is no applicable hospice plan in the record in this case, therefore it is unknown what services Southern Care agreed to provide to the patient. The record also does not establish that Merryville would have provided the patient with hospice services pertaining to the patient's terminal illness had it not contracted with Southern Care. Therefore, we find that material issues of fact remain concerning whether Merryville entered into a subcontract with Southern Care for the performance of all or part of the services that Merryville agreed to provide the patient in this case. Consequently, a summary judgment finding that Merryville is the statutory employer of Lorden under the "two contract defense" contemplated by La.R.S. 23:1061(A)(2) is premature and thereby precluded.

## BORROWING EMPLOYER

Appellants also argue on appeal that the record is insufficient to establish that Merryville is immune from their tort claims on the basis that it is a borrowing, or special, employer under La.R.S. 23:1031(C), which states (emphasis added):

> In the case of any employee for whose injury or death payments are due and who is, at the time of the injury, **employed by a borrowing employer in this Section referred to as a "special employer", and is under the control and direction of the special employer in the performance of the work**, both the special employer and the immediate employer, referred to in this Section as a "general employer", shall be liable jointly and in solido to pay benefits as provided under this Chapter. . . . The special and the general employers **shall be entitled to the exclusive remedy protections provided in R.S. 23:1032**.

11

We agree with Appellants. Merryville did not submit the issue of whether it was Lorden's borrowing employer to the trial court in connection with its summary judgment, and it does not argue on the appeal that it is Lorden's borrowing employer. The record before us does not establish that Merryville is Lorden's borrowing employer.

## ZURICH'S CLAIMS

Zurich also argues on appeal that it was improper for the trial court to dismiss its claims when Merryville's motion for summary judgment did not address Zurich's claims and was not served on Zurich. Because we have found that a summary judgment dismissal of Appellants' claims is not supported by the record, this issue presented by Zurich is thereby rendered moot.

## CONCLUSION

For the reasons stated above, we reverse the trial court's dismissal of Plaintiffs and Zurich's claims against Merryville, and we remand the matter for further proceedings. Costs of this appeal are assessed to Appellee, Merryville Rehabilitation, LP.

**REVERSED AND REMANDED.**