PETTIGREW, J.
1 ¡/The primary issue presented in this appeal is whether defendant, Super Stop Enterprises, Inc. (“Super Stop”), was the statutory employer of claimant, Penny La-branche, at the time of her alleged work-related accident. Following a judgment granting Super Stop’s exception raising the objection of no right of action and dismissing Ms. Labranche’s claims, with prejudice, Ms. Labranche now appeals. For the reasons set forth below, we affirm.
FACTS AND PROCEDURAL , HISTORY
On April 23, 2009, Ms. Labranche was working in the course and scope of her employment with Fatty’s II, a restaurant providing food services on the premises of a truck stop owned by Super Stop. According to the record, Ms. Labranche was coming out of the kitchen when she slipped on a freshly mopped floor and injured her left shoulder. Ms. Labranche filed a disputed claim for compensation naming Fatty’s II as her direct employer and Super Stop as her statutory employer.[2]
In response to Ms. Labranche’s claim, Super Stop filed an exception raising the objection of no right of action, alleging that there was no employment relationship between Ms. Labranche and Super Stop and that Ms. Labranche had no right to workers’ compensation benefits from Super Stop. The matter proceeded to hearing on December 18, 2009, at which time the workers’ compensation judge (“WCJ”) heard arguments from the parties and took the matter under advisement. After considering the applicable law and the evidence[3] in the record, the WCJ rendered judgment on January 4, 2010, sustaining Super Stop’s no right of action exception and dismissing, with prejudice, Ms. La-branche’s claim against Super Stop. It is from this judgment that Ms. Labranche has appealed.
INAPPLICABLE LAW
No Right of Action
Generally an action can only be brought by a person having a real and *1272 actual interest that he asserts. La.Code Civ. P. art. 681. The objection of no right of action tests whether the plaintiff, who seeks relief, is a person in whose favor the law extends a remedy. Howard v. Administrators of Tulane Educational Fund, 2007-2224, p. 16 (La.7/1/08), 986 So.2d 47, 59. A peremptory exception pleading the objection of no right of action tests whether the plaintiff has any interest in judicially enforcing the right asserted. La.Code Civ. P. art. 927 A(6). The objection of no right of action assumes that the petition states a valid cause of action for some person and questions whether the plaintiff in the particular case is a member of the class that has a legal interest in the subject matter of the litigation. Red Stick Studio Development, L.L.C. v. State ex rel. Dept. of Economic Development, 2009-1349, p. 5 (La.App. 1 Cir. 4/8/10), 37 So.3d 1029, 1033. Whether a plaintiff has a right of action is a question of law. Therefore, it is reviewed de novo on appeal. To prevail, the defendant must show that the plaintiff does not possess an interest in the subject matter of the suit. Estate of Mayeaux v. Glover, 2008-2031, p. 5 (La.App. 1 Cir. 1/12/10), 31 So.3d 1090, 1093, wnt denied, 2010-0312 (La.4/16/10), 31 So.3d 1069.
Statutory Employer
The ultimate determination of whether a principal is a statutory employer entitled to immunity is a question of law for the court to decide. Fleming v. JE Merit Constructors, Inc., 2007-0926, p. 8 (La.App. 1 Cir. 3/19/08), 985 So.2d 141, 146. An employer seeking to avail itself of tort immunity bears the burden of proving its entitlement to immunity. Weber v. State, 93-0062, p. 5 (La.4/11/94), 635 So.2d 188, 191. Furthermore, immunity statutes must be strictly construed against the party claiming the immunity. Weber, 93-0062 at 8, 635 So.2d at 193.
Under the Louisiana Workers’ Compensation Act (“the Act”), an employer is liable for compensation benefits to an employee who is injured as a result of an accident arising out of and in the course of employment. La. R.S. 23:1031. Generally, the rights |4and remedies under the Act, La. R.S. 23:1021-1415, provide an employee’s exclusive remedy against the employer for such injury. La. R.S. 23:1032. The Act applies both to a direct employer/employee relationship, as well as to a statutory employer/employee relationship.
Specifically, La. R.S. 23:1061 A(l) provides that when a “ ‘principal’... undertakes to execute any work, which is a part of his trade, business, or occupation and contracts with any person, in this Section referred to as a ‘contractor’, for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal, as a statutory employer, shall be granted the exclusive remedy protections of R.S. 23:1032... .”[4]
The doctrine of “statutory employer” codified in La. R.S. 23:1061, was amended in 1997 to provide that, except in the two-contract situation set forth in La. R.S. 23:1061 A(2), a statutory employer relationship “shall not exist ... unless there is a written contract between the principal and a contractor ... which recognizes the principal as a statutory employer.” La. R.S. 23:1061 A(3). It further provides that when there is such a written contractual recognition of the relationship, there shall be a rebuttable presumption of a statutory employer relationship between the princi *1273 pal and the contractor’s employees that may only be overcome by showing the work performed is not an integral part of or essential to the ability of the principal to generate that principal’s goods, products, or services. La. R.S. 23:1061 A(3).
In sum, there are two bases for finding statutory employment: first, when the principal is in the middle of two contracts, referred to as the “two-contract theory,” see La. R.S. 23:1061 A(2); and second, when there is a written contract recognizing the principal as the statutory employer, see La. R.S. 23:1061 A(3).
1 ¿DISCUSSION
In the instant case, Ms. Labranche argues the trial court erred in sustaining Super Stop’s no right of action exception and dismissing, with prejudice, Ms. La-branche’s claim against Super Stop. Ms. Labranche asserts that there is a written contract in this case; i.e., the commercial lease entered into by Super Stop and Fatty’s II, that establishes a principal/contractor relationship such that Super Stop is indebted to Ms. Labranche for her claim for workers’ compensation benefits. While acknowledging that the lease at issue does not use the terms “principal” and “contractor,” Ms. Labranche asserts this is not fatal to her claim as La. R.S. 23:1061 A(3) merely requires that the contract “recognizes the principal as a statutory employer.” Ms. Labranche maintains that the lease does, in fact, establish and recognize Super Stop as Ms. Labranche’s statutory employer, and, thus, La. R.S. 23:1061 mandates that Super Stop shall provide workers’ compensation benefits to Ms. La-branche.
Citing the general rules of contract interpretation (La. Civ. Code arts. 2045-2057) and maintaining that the words of the lease are clear and explicit, Ms. Labranche highlights sections of the lease as support for her position that Super Stop should be recognized as her statutory employer. Specifically, Ms. Labranche points to sections 8 and 9 of the lease, which provide as follows:
8. OPERATIONS. Lessee must be open for business for 24 hours per day for the first ninety days of its operations. Thereafter, any change in hours may not be made without the written consent of Lessor. Lessee must also maintain and operate the Premises in a clean and orderly manner, in accordance with Section 12 herein [MAINTENANCE AND REPAIR], and must serve food and provide customer service to Lessor’s satisfaction. Failure of Lessee to comply with these requirements, or any related written requests, shall permit Lessor to terminate this contract with three-days written notice.
9. VIDEO POKER OPERATIONS. Lessee must abide by and comply with all provisions of the law and regulations that govern video gaming contained in LSA-R.S. 27:301 et seq. and the Louisiana Administrative Code, Title 42:Part XI¡Section 2401 et seq., and any subsequent amendments thereto.
Lessee must also provide such information and documentation and perform such acts as are required by the Video Draw Poker Devices Control Law, LSA-R.S. 27:301 et seq., and all rules and regulations promulgated pursuant thereto, necessary for the video poker licensee to procure and maintain a Type V video draw poker qualified truck stop facility license to permit the placement of video draw poker devices in the premises.
1 fiLessee further acknowledges and agrees that, for purposes of compliance with the video gaming law at LSA-R.S. 27:306.A(5)(a), and in order to permit the continued operation of video gaming *1274 devices upon the premises of the truck stop facility, Lessor does hereby reserve and shall have ultimate authority, supervision and control over the entire premises of the truck stop facility, including the leased premises, as would be required to satisfy any and all regulatory obligations for the continued operation of the truck stop facility and the video gaming devices located thereon, including the right to terminate this Lease upon the disapproval of the Louisiana Gaming Control Board of this Lease, or upon the disapproval of this Lease by any other regulatory agency which requires said approval.
Based on these two sections of the lease, Ms. Labranche argues in brief to this court that “Super Stop had ultimate authority, supervision and control of Fatty’s II, and that Fatty’s II was contracting to provide food services as required by Super Stop and to Super Stop’s satisfaction.” Ms. Labranche continues, noting that there is no ambiguity in the lease and that the “lease’s plain meaning establishes that Super Stop is the principal and Fatty’s II is a contractor to provide food services which is essential to Super Stop’s trade, business or occupation of operating a truck stop.”
After a thorough review of the record, we find Ms. Labranche’s argument to be without merit. There is simply nothing in the commercial lease between Super Stop and Fatty’s II that serves to establish a principal/contractor relationship such that Super Stop would be recognized as Ms. Labranche’s statutory employer. Rather, the lease establishes nothing more than a lessor/lessee relationship between Super Stop and Fatty’s II. Accordingly, the WO did not err in sustaining Super Stop’s no right of action exception and dismissing, with prejudice, Ms. Labranche’s claims. Based on the unique facts and circumstances herein, Ms. Labranche clearly had no interest in judicially enforcing the right asserted against Super Stop. See La.Code Civ. P. art. 927 A(6).
CONCLUSION
For the above and foregoing reasons, we affirm the January 4, 2010 judgment and assess all appeal costs against Penny La-branche.
AFFIRMED.
J. KLINE, concurs.

. Ms. Labranche originally named Ten-G, L.L.C./DBA Reserve Truck Stop ("Ten-G”) as her statutory employer but later amended her claim to substitute Super Stop as her statutory employer. Ms. Labranche subsequently filed a motion for partial dismissal concerning her claim against Ten-G, and an order dismissing said claim, without prejudice, was signed on October 29, 2009.

.The only evidence introduced into the record of this matter was a commercial lease dated October 31, 2008, entered into between Super Stop and Fatty’s II concerning the terms and conditions under which Fatty’s II would operate its restaurant within Super Stop's premises.

. Under La. R.S. 23:1061 A(l), "work shall be considered part of the principal's trade, business, or occupation if it is an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or services.”