WHIPPLE, J.
|sThe issue presented herein is whether a truck driver, injured in a work accident, and his parents are barred from bringing a tort claim against the scrap metal company at whose yard the truck driver was assigned by his direct employer to haul and deliver scrap metal, on the basis that the scrap metal company was his statutory employer pursuant to the provisions of the Louisiana Workers’ Compensation Act. The trial court granted the scrap metal company’s motion for summary judgment and dismissed the plaintiffs’ claims against it, and the plaintiffs appeal. For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
Charles Mitchell was employed by IPC Contractors, LLC, as a truck driver. IPC Contractors had contracted with Southern Scrap Recycling Morgan City, LLC (“Southern Scrap Morgan City”), whereby IPC Contractors provided trucking services to Southern Scrap Morgan City. In fulfilling this contract, IPC Contractors assigned Charles to work at Southern Scrap Morgan City’s Houma yard. Pursuant to this arrangement, Charles drove a truck carrying large metal containers owned by Southern Scrap Morgan City to various facilities with which Southern Scrap Morgan City contracted to deliver and pick up scrap material placed in those large metal containers.
*756 On August 9, 2008, Charles was injured while delivering a load of scrap at the Houma facility. When Charles attempted to open the “gate,” or door, of the container, the gate, which weighed in excess of 700 pounds, became detached from the container and fell on Charles. Charles, who was twenty-one years old at the time of the accident, was seriously injured.
| ./Thereafter, Charles and his parents, James and Barbara Mitchell, filed a suit for damages against Southern Scrap Material Company, LLC; Southern Scrap Recycling, LLC; and Southern Scrap Recycling Morgan City, LLC (“the Southern Scrap defendants”), among others, contending that the Southern Scrap defendants were liable to them for failing to provide a safe container free from vices and for various alleged acts of negligence.[1]
On June 21, 2010, Southern Scrap Morgan City moved for summary judgment, contending that it was immune from tort liability as Charles’s statutory employer pursuant to LSA-R.S. 23:1061. Southern Scrap Morgan City contended that it was entitled to statutory employer status because it contracted with Charles’s immediate employer, IPC Contractors, through a Master Service Contract dated July 28, 2006, in which the parties agreed that Southern Scrap Morgan City shall be considered the “special employer” or “statutory employer,” as defined in LSA-R.S. 28:1031 and 23:1061. Thus, Southern Scrap Morgan City averred that because the exclusive remedy available to plaintiffs was workers’ compensation, plaintiffs were precluded from bringing a tort claim against it.
Plaintiffs opposed the motion, arguing that the Master Service Contract did not unambiguously recognize Charles as a statutory employee in that there were two conflicting provisions in the contract addressing this issue and that questions of fact remain as to whether trucking is an integral part of Southern Scrap Morgan City’s business.
Following a hearing on the motion, the trial court granted Southern Scrap Morgan City’s motion for summary judgment and dismissed plaintiffs’ claims against it with prejudice. From this judgment, plaintiffs ^appeal, contending that: (1) the trial court committed legal error in utilizing the law of statutory construction when considering the conflicting paragraphs of the Master Service Contract, instead of construing the ambiguity against the drafter; (2) the trial court committed legal error in failing to apply Prejean v. Maintenance Enterprises, Inc., 2008-0364 (La.App. 4th Cir.3/25/09), 8 So.3d 766, writ denied, 2009-0892 (La.6/26/09), 11 So.3d 496; and (3) the trial court erred in failing to determine that genuine issues of material fact existed as to whether trucking is an integral part of Southern Scrap Morgan City’s business.
BURDEN OF PROOF AND STANDARD OF REVIEW FOR SUMMARY JUDGMENT
A motion for summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B). The summary judgment procedure is expressly favored in the law and is designed to secure the just, speedy, and inexpensive determina *757 tion of non-domestic civil actions. LSA-C.C.P. art. 966(A)(2).
The mover bears the burden of proving that he is entitled to summary judgment. LSA-C.C.P. art. 966(C)(2). However, if the mover will not bear the burden of proof at trial on the subject matter of the motion, he need only demonstrate the absence of factual support for one or more essential elements of his opponent’s claim, action, or defense. LSA-C.C.P. art. 966(C)(2). If the moving party points out that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense, then the nonmoving party must produce factual support sufficient to satisfy his evi-dentiary burden at trial. LSA-C.C.P. art. |R966(C)(2). If the mover has put forth supporting proof through affidavits or otherwise, the adverse party may not rest on the mere allegations or denials of his pleadings, but his response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. LSA-C.C.P. art. 967(B).
If, on.the other hand, the mover will bear the burden of proof at trial, that party must support his motion with credible evidence that would entitle him to a directed verdict if not controverted at trial. Hines v. Garrett, 2004-0806 (La.6/25/04), 876 So.2d 764, 766. Such an affirmative showing will then shift the burden of production to the party opposing the motion, requiring the opposing party either to produce evidentiary materials that demonstrate the existence of a genuine issue for trial or to submit an affidavit requesting additional time for discovery. Hines, 876 So.2d at 766-767.
In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court’s determination of whether summary judgment is appropriate. East Tangipahoa Development Company, LLC v. Bedico Junction, LLC, 2008-1262 (La.App. 1st Cir.12/23/08), 5 So.3d 238, 243-244, writ denied, 2009-0166 (La.3/27/09), 5 So.3d 146.
DISCUSSION
Under the Louisiana Workers’ Compensation Act (“the Act”), an employer is liable for compensation benefits to an employee who is injured as a result of an accident arising out of and in the course of employment. LSA-R.S. 23:1031. Generally, the rights and remedies under the Act provide an employee’s exclusive remedy against the employer for such injury. LSA-R.S. 23:1032. Moreover, the Act applies both to a direct |7employer/employee relationship, as well as to a statutory employer/employee relationship. Labranche v. Fatty’s, LLC, 2010-0475 (La.App. 1st Cir.10/29/10), 48 So.3d 1270,1272.
Specifically, LSA-R.S. 23:1061(A)(1) provides that when a “principal” undertakes to execute any work, “which is a part of his trade, business, or occupation” and contracts with a “contractor” for the execution of “the whole or any part of the work undertaken by the principal,” the principal, as a “statutory employer,” shall be liable to pay to any employee employed in the execution of the work “any compensation” under the Act and “shall be granted the exclusive remedy protections of R.S. 23:1032-” Thus, a “statutory employer” is liable to pay any employee employed in the execution of the work any compensation due under the Act and, in turn, is entitled to statutory immunity. LSA-R.S. 23:1061(A)(1).
The doctrine of “statutory employer” codified in LSA-R.S. 23:1061 was amended in 1997 to provide that, except in the two-contract situation set forth in LSA-R.S. 23:1061(A)(2), a statutory employer relationship “shall not exist ... unless *758 there is a -written contract between the principal and a contractor ... which recognizes the principal as a statutory employer.” LSA-R.S. 23:1061(A)(3). When there is such written contractual recognition of the relationship, there shall be a rebuttable presumption of a statutory employer relationship between the principal and the contractor’s employees that may be overcome only by showing the work performed is not an integral part of or essential to the ability of the principal to generate that principal’s goods, products, or services. LSA-R.S. 23:1061(A)(3); Labranche, 48 So.3d at 1272-1273.
An employer seeking to avail itself of tort immunity bears the burden of proving its entitlement to immunity. Furthermore, immunity statutes |Rmust be strictly construed against the party claiming the immunity. Labranche, 48 So.3d at 1272. The ultimate determination of whether a principal is a statutory employer entitled to immunity is a question of law for the court to decide. Fleming v. JE Merit Constructors, Inc., 2007-0926 (La.App. 1st Cir.3/19/08), 985 So.2d 141, 146.
In the instant case, the Master Service Contract in effect between Southern Scrap Morgan City and IPC Contractors, Charles’s direct employer, provided in paragraph 25, in pertinent part, as follows:
It is the intent of [IPC Contractors] and [Southern Scrap Morgan City] that, for purposes of the LA R.S. Chapter 23, [Southern Scrap Morgan City] shall be considered the “special employer” or “statutory employer” and [IPC Contractors] shall be considered the “general employer” (each as defined in LA R.S. 23:1031 or 23:1061) with respect to each and every employee of [IPC Contractors] and its subcontractors (the “Contractor Employees”) and each Contractor Employee shall be deemed, for purposes of LA R.S. 23:1031, to be under the control and direction of [Southern Scrap Morgan City]. As such, [Southern Scrap Morgan City] and [IPC Contractors] are each entitled to the exclusive remedy protections provided by LA R.S. 23:1032....
This contractual language clearly recognizes Southern Scrap Morgan City’s status as the statutory employer of IPC Contractors’s employees, as contemplated by LSA-R.S. 23:1061(A)(3).
Nonetheless, in their first assignment of error, the Mitchells argue that, despite the clear language in paragraph 25 establishing the parties’ intent that Southern Scrap Morgan City be recognized as the statutory employer of IPC Contractors’s employees, the language of paragraph 13 creates an ambiguity, thus preventing a finding of statutory employer status. Paragraph 13, addressing IPC Contractors’s independent contractor status, provides as follows:
[IPC Contractors] shall be an independent Com,pany with respect to the performance to all work hereunder, and neither [IPC Contractors] nor anyone employed by [IPC Contractors] \c,shall be deemed for any purpose to be the employee, agent, servant or representative of [Southern Scrap Morgan City] in the performance of any work or service or part thereof in any manner dealt with herein. [Southern Scrap Morgan City] shall have no direction or control of [IPC Contractors], its employees and agents except in the result to be obtained. The work contemplated herein shall meet the approval of [Southern Scrap Morgan City] and shall be subject to the general right of inspection of [Southern Scrap Morgan City] to secure the satisfactory completion hereof. The actual performance and supervision of all work hereunder shall be by [IPC Contractors], but [Southern Scrap Morgan City] or its representatives shall *759 have unlimited access to the operations to determine whether the work is being performed by [IPC Contractors] in accordance with all the provisions of this Contract and any applicable work order. [Emphasis added.]
However, contrary to the Mitchells’ arguments, this contractual language is irrelevant to the determination of whether Southern Scrap Morgan City is entitled to tort immunity herein under the Act. The requirements set forth by the legislature for “statutory employer” status and its resulting liability for workers’ compensation benefits and concomitant right to tort immunity have nothing to do with whether or not the injured employee’s direct employer was designated as an independent contractor in the contract between the parties. See Zuccarello v. Exxon Corporation, 756 F.2d 402, 410 (5th Cir.1985); Johnson v. Tennessee Gas Pipeline Company, 99 F.Supp.2d 755, 758 (E.D.La.2000). As noted by the federal district court in Johnson, even if a worker is found to be an independent contractor, he may still be subject to the workers’ compensation laws if he is also determined to be a “statutory employee” pursuant to LSA-R.S. 23:1032 and 23:1061. Johnson, 99 F.Supp.2d at 758.
We further find no merit to the Mitch-ells’ argument in their second assignment of error that the trial court herein erred in failing to find the Master Service Contract to be unenforceable pursuant to the Fourth Circuit Court of Appeal’s holdings in Prejean. In Prejean, the contract between the | mprincipal and the injured worker’s immediate employer required the principal to pay workers’ compensation benefits only “if the immediate employer, [contractor, or its subcontractors as applicable, is unable to meet their financial obligation under the Louisiana Workers’ Compensation Statute.” Prejean, 8 So.3d at 774. The Fourth Circuit determined that the principal therein was not entitled to “statutory employer” status because the above-quoted contractual provision amounted to “modifying, and even renouncing, the unconditional obligation” of workers’ compensation to the injured worker. The court concluded that because the principal did not accept unconditionally the obligation of a statutory employer, it could not obtain the benefit of a statutory employer. Prejean, 8 So.3d at 776.
In the instant case, the Mitchells contend that the Master Service Contract similarly contains a provision through which Southern Scrap Morgan City attempts to avoid its responsibility under the workers’ compensation law by requiring the direct employer, IPC Contractors, to be responsible for all workers’ compensation obligations. Specifically, in support of their contention that Southern Scrap Morgan City has attempted to avoid its responsibility for workers’ compensation, the Mitch-ells rely on paragraph 9 of the Master Service Contract, which provides, in pertinent part, as follows:
At any and all times during the term of this Agreement, [IPC Contractors] agrees to procure and maintain, or cause to be procured and maintained, insurance policies with coverages, terms, conditions and underwriters acceptable to [Southern Scrap Morgan City], which, at a minimum, shall provide the coverages as shown and described on Exhibit “A” attached hereto.... Further, [IPC Contractors] agrees to execute the Hold Harmless and Indemnity Agreement attached hereto as Exhibit “B”.
| n Exhibits A and B to the Master Service Contract required IPC Contractors to procure workers’ compensation insurance coverage and further required IPC Contractors to “indemnify and hold [Southern Scrap Morgan City] harmless” from any *760 liability in defending any claim brought against it, “including, but not limited to, those brought by ... [IPC Contractors’s] Employees,” for damages or injury “in connection with the work to be performed, services rendered or material furnished to or for the benefit of’ Southern Scrap Morgan City.
However, the provision of the Master Service Contract relied upon by the Mitchells herein differs significantly from the pertinent provisions of the contract in Prejean.. Specifically, as opposed to the contractual provision in Prejean, which attempted to limit the injured worker’s compensation remedies against the principal, paragraph 9 herein serves only to allocate ultimate liability as between Southern Scrap Morgan City and IPC Contractors, rather than depriving Mitchell of the statutorily-protected compensation remedy that he may choose to exercise against either his direct employer, IPC Contractors, or his statutory employer, Southern Scrap Morgan City. Such a contractual provision is not invalid. Cantu v. Shaw Group, Inc., 2009-1774, p. 2 n. 3 (La.App. 1st Cir.5/3/10), 2010 WL 1752511 (unpublished); see also St. Angelo v. United Scaffolding, Inc./X-Serv., Inc., 2009-1420 (La.App. 4th Cir.5/19/10), 40 So.3d 365, 371-372, writ denied. 2010-1412 (La.9/24/10), 45 So.3d 1082.
Thus, given the existence of a written contract as required by LSA-R.S. 23:1061(A)(3), Southern Scrap Morgan City is presumed to be Charles’s statutory employer. See Fleming, 985 So.2d at 147. To rebut this presumption, the Mitchells had the burden of demonstrating that the work Charles was performing at the time he was injured was not a part of |12Southern Scrap Morgan City’s trade, business, or occupation. In their third assignment of error, the Mitchells contend that the trial court erred in failing to determine that genuine issues of material fact existed as to whether trucking is an integral part of Southern Scrap Morgan City’s business.
Under LSA-R.S. 23:1061(A)(1), “work shall be considered part of the principal’s trade, business, or occupation if it is an integral part of or essential to the ability of the principal to generate that individual principal’s goods, products, or services.” In support of its motion for summary judgment, Southern Scrap Morgan City presented portions of the deposition testimony of its vice-president and the supervisor of its Houma yard to establish the nature and needs of its business. According to the testimony of these men, Southern Scrap Morgan City is engaged in the scrap metal business, whereby it purchases scrap material from customers offsite, transports the scrap material to its facilities in Hou-ma or Morgan City, processes the scrap, and then resells it for a profit. Thus, having the scrap material it purchases delivered to its Houma or Morgan City facility for processing is an integral part of Southern Scrap Morgan City’s business and essential to its ability to resell the processed scrap metal.
Although the Mitchells contend on appeal that a material issue of fact still remains as to whether trucking is an integral part of Southern Scrap Morgan City’s business, the evidence they offered in opposition to the motion for summary judgment does not create such an issue of fact and does not rebut the presumption that Southern Scrap Morgan City is Charles’s statutory employer. See Everett v. Rubicon, Incorporated, 2004-1988 (La.App. 1st Cir.6/14/06), 938 So.2d 1032, 1043, writ denied, 2006-1785 (La.10/13/06), 939 So.2d 369.
| ^Accordingly, we find no error in the trial court’s conclusion that the Mitchells failed to overcome the presumption con *761 ferred by LSA-R.S. 23:1061(A)(3). Thus, Southern Scrap Morgan City’s motion for summary judgment was properly granted.
CONCLUSION
For the above and foregoing reasons, we affirm the trial court’s January 7, 2011 judgment, granting Southern Scrap Morgan City’s motion for summary judgment and dismissing the Mitchells’ suit against it with prejudice. Costs of this appeal are assessed against plaintiffs, Charles, James, and Barbara Mitchell.
AFFIRMED.
KUHN, J., dissents & assigns reasons.

. The Mitchells later amended their petition to name Louisiana Container Company, Inc., the manufacturer of the container at issue, as an additional defendant. Various incidental actions were also filed, but they are not at issue in this appeal.