STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2019 CA 0309

MICHAEL SPEARS

VERSUS

EXXON MOBIL CORPORATION AND
TURNER INDUSTRIES GROUP, L.L.C.

Judgment Rendered:   DEC 1 7 2019

* * * * *

On Appeal from
The 19th Judicial District Court,
Parish of East Baton Rouge, State of Louisiana
Trial Court No. C658600
The Honorable R. Michael Caldwell, Judge Presiding

* * * * *

Eulis Simien Jr.                                    Attorneys for Plaintiff/Appellant,
Matthew Pertuit                                     Michael Spears
Baton Rouge, Louisiana


Robert T. Myers                                     Attorney for Defendant/Appellee,
Metairie, Louisiana                                 ExxonMobil Corporation


Thomas E. Balhoff                                   Attorneys for Defendant/Appellee,
Judith R. Atkinson                                  Turner Industries Group, L.L.C.
Baton Rouge, Louisiana


* * * * *

BEFORE:  WHIPPLE, C.J., GUIDRY, AND CRAIN,[1] JJ.

---

[1]     Justice Will Crain is serving as judge *ad hoc* by special appointment of the Louisiana
Supreme Court.

**CRAIN, J.**

In this tort suit, Michael Spears appeals a summary judgment dismissing his claims with prejudice against ExxonMobil Corporation. We affirm.

## FACTS AND PROCEDURAL HISTORY

ExxonMobil contracted with Poly-America, L.P. to collect and remove scrap polyethylene pellets from ExxonMobil's plastics plant in Baton Rouge. The parties agreed ExxonMobil would be "the statutory employer of employees of [Poly-America] and subcontractors while such employees are engaged in [w]ork" under the contract. Poly-America subcontracted with an affiliated entity, Poly Trucking, Inc., to do the work. Poly Trucking employed Spears.

The work required the use of a vacuum truck to collect the polyethylene pellets and a worker who used a water hose, when needed, to direct the pellets into the vacuum sump. While engaged in that work, Spears allegedly slipped and fell on an algae-covered surface at the worksite. He filed suit against multiple parties, including ExxonMobil, alleging it failed to provide a safe place for persons on the premises, failed to timely remove the algae, and failed to institute and enforce policies and procedures to discover hazards on the premises.

ExxonMobil filed a motion for summary judgment urging it was Spears's statutory employer and thus immune from tort liability under the Workers' Compensation Act. *See* La. R.S. 23:1032A(1)(a) and 1061A. The trial court agreed, granted the motion, and signed a judgment on September 5, 2018, dismissing Spears's claims against ExxonMobil with prejudice. Spears appeals.

2

## DISCUSSION

After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show there is no genuine issue as to material fact and mover is entitled to judgment as a matter of law. La. Code Civ. Pro. art. 966A(3). The summary judgment procedure is favored and shall be construed to secure the just, speedy, and inexpensive determination of every action. La. Code Civ. Pro. art. 966A(2). In determining whether summary judgment is appropriate, appellate courts review evidence *de novo* under the same criteria governing the trial court's determination of whether summary judgment is appropriate. *In re Succession of Beard*, 13-1717 (La. App. 1 Cir. 6/6/14), 147 So. 3d 753, 759-60.

If the mover will bear the burden of proof at trial on the issue before the court on the motion, the burden of showing there is no genuine issue of material fact remains with the mover. *See* La. Code Civ. Pro. art. 966D(1); *Smith v. Moreau*, 17-0003 (La. App. 1 Cir. 6/2/17), 222 So. 3d 761, 765. When a motion is made and properly supported, an adverse party may not rest on the mere allegations or denials of his pleading; his response, by affidavits or as otherwise provided by law, must set forth specific facts showing there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him. *See* La. Code Civ. Pro. art. 967B.

A fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. *Hines v. Garrett*, 04-0806 (La. 6/25/04), 876 So. 2d 764, 765 (*per curiam*); *Smith v. Our Lady of the Lake Hospital, Inc.*, 93-2512 (La. 7/5/94), 639 So. 2d 730, 751. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. *Hines*, 876 So. 2d at 765-66; *Smith*, 639 So. 2d

at 751. Because the applicable substantive law determines materiality, whether a particular fact in dispute is material must be viewed in light of the substantive law applicable to the case. *Bryant v. Premium Food Concepts, Inc.*, 16-0770 (La. App. 1 Cir. 4/26/17), 220 So. 3d 79, 82, *writ denied*, 17-0873 (La. 9/29/17), 227 So. 3d 288.

The Louisiana Workers' Compensation Act contains a broad version of the statutory employer doctrine, which seeks to prevent employers from circumventing their liability for workers' compensation benefits by interjecting intermediary entities between themselves and their workers. *See* La. R.S. 23:1061; *Allen v. State ex rel. Ernest N. Morial-New Orleans Exhibition Hall Authority*, 02-1072 (La. 4/9/03), 842 So. 2d 373, 377-78 (citing Maraist and Galligan, *The Employer's Tort Immunity: A Case Study in Post-Modern Immunity*, 57 La. L. Rev. 467, 488 (1997)). To that end, the Act extends the employer's compensation obligation and corresponding tort immunity to a "principal," also referred to as a "statutory employer," in two instances: (1) when a party undertakes to carry out any work that is a part of its trade, business, or occupation by means of a contract with another party; or (2) when a party contracts to perform work and sub-lets any portion of the work to another party ("two contract" basis). *See* La. R.S. 23:1032A(1)-(2) and 1061A(1)-(2); *Allen*, 842 So. 2d at 378.

Under the first basis, which focuses on the principal's trade, business, or occupation, a written contract recognizing the principal as a statutory employer is necessary. Louisiana Revised Statute 23:1061A(3) provides:

> [A] statutory employer relationship shall not exist between the principal and the contractor's employees, whether they are direct employees or statutory employees, unless there is a written contract between the principal and a contractor which is the employee's immediate employer or his statutory employer, which recognizes the principal as a statutory employer.

If a contract complies with this provision, "there shall be a rebuttable presumption of a statutory employer relationship between the principal and the contractor's employees, whether direct or statutory employees." La. R.S. 23:1061A(3). The presumption may be overcome only by showing the work is not an integral part of or essential to the ability of the principal to generate its goods, products, or services. *Id.*

The two-contract basis is set forth in Subsection 23:1061A(2) as follows:

> A statutory employer relationship shall exist whenever the services or work provided by the immediate employer is contemplated by or included in a contract between the principal and any person or entity other than the employee's immediate employer.

The party common to both contracts, typically a contractor who entered an agreement with an owner and sub-contracted the work to another party, becomes the statutory employer of the sub-contractor's employees. The nature of the work, particularly whether it falls within the principal's trade, business, or occupation, is irrelevant to this determination. *See Allen*, 842 So. 2d at 378-79.

An employer seeking to avail itself of tort immunity bears the burden of proving its entitlement to immunity. *Patterson v. Raceland Equipment Company, LLC*, 17-0703 (La. App. 1 Cir. 4/18/18), ___ So. 3d ___, ___ (2018WL1870156, *3), *writ denied*, 18-1018 (La. 10/8/18), 253 So. 3d 799. Whether certain work is part of a principal's trade, business, or occupation is based on the facts of each case; however, the ultimate determination of whether a principal is a statutory employer entitled to immunity is a question of law for the court to decide. *See Patterson*, ___ So. 3d at ___ (2018WL1870156 at 3); *Smith*, 222 So. 3d at 768.

ExxonMobil primarily relies on its contract with Poly-America, which ExxonMobil contends complies with the requirements of Subsection 23:1061A(3) and creates a rebuttable presumption of statutory employment. To avail itself of the statutory presumption, ExxonMobil must prove the existence of a written

5

contract containing the necessary declaration of its statutory employment status. *See* La. R.S. 23:1061A(3). ExxonMobil introduced excerpts of two sets of documents in one exhibit. One set contains three pages, each dated December 23, 2015, and captioned "STD. PURCHASE ORDER." They identify the parties as ExxonMobil and Poly-America, and generally describe the work as "[p]rovide pickup/delivery service at BRPP for all containers of Polyethylene Scrap as well as Polyethylene Scrap Recovery Vacuum Service" for a quoted amount of "$1.00." Poly-America is identified as the "Vendor" and "Supplier." The third page has a list of other documents, identified by name and a number, that contain other terms and conditions applicable to the transaction.

The second excerpt is four pages of general terms and conditions, and contains an identification number at the top that corresponds to one of the document numbers identified in the first excerpt as applicable to the transaction. The pagination at the bottom of each page indicates the complete document has seven pages. This excerpt contains a section expressly recognizing ExxonMobil "as the statutory employer of employees of [Poly-America] and subcontractors while such employees are engaged" in the contracted work.

A signature page is not included with either set of excerpts, but affidavits from representatives of ExxonMobil and Poly-America identify the collective documents as the contract between the parties. Spears did not object to the excerpts and does not dispute they form a part of a written contract between ExxonMobil and Poly-America. Under these circumstances, we find the evidence sufficiently establishes a written contract between ExxonMobil and Poly-America, which recognizes ExxonMobil as a statutory employer of Poly-America's employees. *See* La. Code Civ. Pro. art. 966D(2); *Jackson v. City of Zachary*, 17-1583 (La. App. 1 Cir. 8/6/18), 256 So. 3d 323, 328 n.3; *compare Rainey v. Entergy*

*Gulf States, Inc.*, 09-572 (La. 3/16/10), 35 So. 3d 215, 225-29; *Fleming v. JE Merit Constructors, Inc.*, 07-0926 (La. App. 1 Cir. 3/19/08), 985 So. 2d 141, 147.

Spears contends a presumption of statutory employment does not arise between ExxonMobil and himself, because the contract is between ExxonMobil and Poly-America, rather than Spears's immediate employer, Poly Trucking. The statute mandates the contract must be "between the principal and a contractor which is the employee's immediate employer *or his statutory employer.*" *See* La. R.S. 23:1061A(3) (emphasis added). Contrary to Spears's argument, a contract between the principal and the worker's immediate employer is not necessary if the principal contracted with a statutory employer of the worker. *Id.* Consistent with that premise, the statute further specifies that the rebuttable presumption of statutory employment arising out of the agreement extends from the principal to "the contractor's employees, whether direct *or statutory employees.*" *See* La. R.S. 23:1061A(3). For the reasons detailed below, Poly-America is the statutory employer of the employees of Poly Trucking.

Spears asserts ExxonMobil submitted no evidence establishing Poly-America was his statutory employer. We disagree. The contract with Poly-America, as well as affidavits from representatives of ExxonMobil and Poly-America, establish that ExxonMobil entered a contract for the subject work with Poly-America, who subcontracted all or part of the work to Poly Trucking. As a result of those two contracts, Poly-America, the party to both contracts, became the statutory employer of Poly Trucking's employees. *See* La. R.S. 23:1061A(2); *Allen*, 842 So. 2d at 379. Under the two-contract basis for statutory employment, Poly-America was Spears's statutory employer. ExxonMobil's written contract with Poly-America thus complies with Subsection 23:1061A(3). Spears's argument to the contrary is without merit.

7

Spears next contends the written agreement, captioned "PURCHASE ORDER," is a contract of sale that is excluded from Subsection 23:1061A(3). Spears maintains that any services provided were part of an "overall sales agreement" whereby Poly-America acquired the plastic pellets and transported them to the company's facility in Texas.

While Subsection 23:1061A(3), as amended in 1997, requires a "written contract" containing a declaration of the principal's statutory employer status, the statute does not specify a particular type or legal classification of contract. *See* La. Acts 1997, No. 315, § 1. According to one commentator, the requirements added by the 1997 amendments, particularly the necessity of an express declaration of the principal's statutory employer status in a written contract, "appear to have made the intricate discussions about whether a principal-contractor-employee relationship could exist in a contract of sale largely academic." *See* Johnson, 13 Louisiana Civil Law Treatise, Workers' Compensation Law and Practice § 123 (5th Ed.). As explained by Professor Johnson:

> The 1997 amendments to La. [R.S.] 23:1061 describe generally the types of contractual relationships that could lead to a conclusion that there is a statutory employment situation, and they do not limit those types of relationships nor do they exclude any particular types of contracts, such as sale. The central question to be asked is whether the contract—whatever type of contract it might be—"recognizes" the principal as a statutory employer. This raises the presumption that this is the appropriate legal conclusion about the relationship, subject to proof that the statutory requirements to support such a relationship are not present. A typical contract of sale is not likely to contain a "recognition" of such a relationship, and that would put an end to the matter.

In the unlikely event a contract of sale recognizes such a relationship, according to Professor Johnson, the presumption of statutory employment would still arise but could be rebutted by proof that the work in question was not "an integral part of or essential to the ability of the principal to generate that individual principal's goods,

products or services." *Id.*; *see also* La. R.S. 23:1061A(1) and (3). We agree with this interpretation of the statute.

When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. La. Civ. Code art. 9; *see also* La. R.S. 1:4; *Ashe v. Board of Supervisors of Louisiana State University*, 15-1472 (La. App. 1 Cir. 4/15/16), 193 So. 3d 228, 235. Aside from the form of the agreement, Subsection 23:1061A(3) contains no express requirement concerning the nature of the contract wherein the parties recognize the principal as a statutory employer. Spears's contention the statute is limited to, or expressly excludes, certain legal classifications of written contracts is without merit.

We conclude that ExxonMobil's contract satisfies the requirements of Subsection 23:1061A(3) and gives rise to a rebuttable presumption that ExxonMobil is Spears's statutory employer. The burden of proof thus shifted to Spears to produce factual support, sufficient to establish a genuine issue of material fact, proving his work was not an integral part of or essential to ExxonMobil's ability to generate its goods, products, or services. *See* La. Code Civ. Pro. art. 966D(1); *Patterson*, ___ So. 3d ___, (2018WL1870156); *Mitchell v. Southern Scrap Recycling, L.L.C.*, 11-2201 (La. App. 1 Cir. 6/8/12), 93 So. 3d 754, 760, *writ denied*, 12-1502 (La. 10/12/12), 99 So. 3d 47.

Spears relies on provisions in the contract that purportedly create genuine issues of material fact concerning his status, specifically a provision stating that Poly-America "is an independent contractor responsible for controlling and supervising its personnel and equipment and is not the agent or employee" of ExxonMobil. That section further provides that neither Poly-America nor its employees "are entitled to participate in or receive benefits from any employee

9

benefit plan sponsored by" ExxonMobil. According to Spears, these provisions are "directly at odds" with the contractual language recognizing ExxonMobil as a statutory employer of the employees of Poly-America and its subcontractors, and create a "disputed fact as [to] what the contract was intended to accomplish."

Louisiana Revised Statute 23:1021(7) excludes an "independent contractor" from coverage under the Act, unless a substantial part of his work is manual labor. An "independent contractor" is defined as "any person who renders service, other than manual labor, for a specified recompense for a specified result either as a unit or as a whole, under the control of his principal as to results of his work only, and not as to the means by which such result is accomplished." La. R.S. 23:1021(7).

The contractual language cited by Spears describes Poly-America, identified in the contract as the "Supplier," as an independent contractor. Poly-America's legal status as an independent contractor, if accepted as true, does not preclude a finding that Spears, an employee of Poly-America's subcontractor, is a statutory employee of ExxonMobil. *See Mitchell*, 93 So. 3d at 759; *Johnson v. Motiva Enterprises LLC*, 13-305 (La. App. 5 Cir. 10/30/13), 128 So. 3d 483, 491, *writ denied*, 13-2791 (La. 2/14/14), 132 So. 3d 966. If the injured worker's employer, whether immediate or statutory, is an independent contractor, nothing in Subsection 23:1061A prevents the independent contractor from entering a written agreement with a principal recognizing the principal as a statutory employer of the employees of the contractor and its subcontractors. The statute contains no language excluding from its scope agreements with independent contractors.

When, as here, the necessary written agreement exists, a presumption of statutory employment between the principal and the worker arises. *See* La. R.S. 23:1061A(3). At that point, a worker seeking to remove himself from the Act's coverage must prove his work was not an integral part of or essential to the ability of the principal to generate its goods, products, or services. *Id.* The worker does

10

not meet that burden, or create a genuine issue of material fact in that regard, by merely pointing out, without more, that his employer is an independent contractor.

While the same evidence may be relevant to both determinations, the doctrines of independent contractor and statutory employment are distinct. The definition of independent contractor generally focuses on the degree of control and supervision, or lack thereof, over the worker to determine whether the worker is an actual employee or a true independent contractor. *See* La. R.S. 23:1021(7); *Smith*, 222 So. 3d at 766. That inquiry is not concerned with statutory employment, a legal concept whereby an employee of a contractor or sub-contractor is deemed to be the "statutory" employee of another party. *See* La. R.S. 23:1061. For present purposes, the statutory employment determination, and more specifically the burden to rebut the presumption of that employment under Subsection 23:1061A(3), emphasizes the nature of the contracted work and its relationship to the principal's trade, business, or occupation. *See* La. R.S. 23:1061. To rebut that presumption, a party must present evidence establishing that the contracted work, regardless of who controlled or supervised it, was not an integral part of or essential to the principal's ability to generate its goods, products, or services. *See* La. R.S. 23:1061A(3). Spears presented no such evidence.

Spears submitted excerpts from his deposition and the depositions of two co-employees, Raphael Frill and Randall Samuels Jr. Frill testified that Poly-America or Poly Trucking buys the pellets, and he and a crew of three other Poly Trucking employees use vacuum trucks to gather and remove the pellets from ExxonMobil's plastics plant. The crew vacuums the pellets and uses a water hose as needed to wash the pellets into a sump. The work is supervised and mostly controlled by Frill. According to Spears, he fell while wrapping up a hose after washing pellets into the sump. Spears's evidence also includes a letter from Poly-America to ExxonMobil confirming a quote for "vacuum services at the ExxonMobil facility

11

in Baton Rouge for $1 . . . for the year 2016." The services, per the letter, would be provided by Poly Trucking.

Accepting all of the foregoing information as true, none of the evidence rebuts the presumption of statutory employment. To create a genuine issue of material fact, Spears had to present evidence proving that the work he was performing at the time of the accident—the removal of plastic pellets from ExxonMobil's plant—was not an integral part of or essential to ExxonMobil's ability to generate its goods, products, or services. *See* La. R.S. 23:1061A(3). Spears's evidence does not address that issue. Instead, it demonstrates that Poly Trucking's personnel supervised and performed the work. That evidence, alone, does not shed any light on the relationship or significance of the work to ExxonMobil's ability to generate its goods, products, or services.

Spears also argues the evidence shows the transaction, at least in part, involved a sale of the plastic pellets by ExxonMobil to Poly-America. While that may be true, the relevant question remains whether the physical collection and removal of the pellets from ExxonMobil's premises, regardless of which party received compensation in the transaction, was necessary for ExxonMobil to generate its products. That question is not answered by evidence that Poly-America, recognizing the pellet's intrinsic market value, purchased the pellets from ExxonMobil. Spears was a laborer injured while performing work. His employer's motivation for undertaking the contracted work does not make the work any less essential to the principal's ability to generate its goods, products, or services. The focus of the inquiry is the work itself, not the contractor's reasons for performing the work.[1]

---

[1] Although the presumption of statutory employment is sufficient to shift the burden of proof herein to Spears, we note ExxonMobil introduced an affidavit from one of its superintendents who attested the removal of the plastic pellets is done daily at the plastics plant, is an integral part of ExxonMobil's ability to produce polyethylene, and was done internally by ExxonMobil prior to the subject contract.

12

Spears presented no evidence that, if accepted as true, rebuts the presumption of statutory employment. The trial court properly granted summary judgment dismissing Spears's claims against ExxonMobil. *See Patterson*, ___ So. 3d at ___, (2018 WL 1870156 at \*4); *Mitchell*, 93 So. 3d at 760-61.

## CONCLUSION

The September 5, 2018 summary judgment is affirmed. All costs of this appeal are assessed to Michael Spears.

**AFFIRMED.**