GARRED WHOTTE, ET AL.

VERSUS

INTERNATIONAL PAPER COMPANY

**********

APPEAL FROM THE
TENTH JUDICIAL DISTRICT COURT
PARISH OF NATCHITOCHES, NO. 86020
HONORABLE ERIC ROGER HARRINGTON, DISTRICT JUDGE

**********

JOHN E. CONERY
JUDGE

**********

Court composed of Sylvia R. Cooks, James T. Genovese, and John E. Conery, Judges.

Cooks, J., concurs and assigns reasons.

AFFIRMED.

Herschel E. Richard, Jr.
Andrew P. Lambert
Cook, Yancey, King & Galloway
Post Office Box 22260
Shreveport, Louisiana 71120-2260
(318) 221-6277
COUNSEL FOR DEFENDANT/APPELLEE:
      International Paper Company

**John R. Whaley**
**Whaley Law Firm**
**3112 Valley Creek Drive, Suite D**
**Baton Rouge, Louisiana  70808**
**(225) 302-8810**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
    **Garred Whotte**
    **Megan Whotte**

**CONERY, Judge.**

The plaintiffs, Garred and Megan Whotte, filed a personal injury lawsuit against International Paper Company (IPCO) for injuries sustained by Mr. Whotte in an industrial accident. The trial court granted IPCO's motion for summary judgment, dismissing the Whottes' lawsuit with prejudice, finding that IPCO was immune from a suit sounding in tort on the basis that Mr. Whotte was IPCO's statutory employee pursuant to the provisions of the Louisiana Workers' Compensation Act. For the following reasons, we affirm the trial court's judgment dismissing the plaintiffs' personal injury lawsuit against IPCO.

## FACTS AND PROCEDURAL HISTORY

On July 9, 2014, Mr. Whotte and his wife, Mrs. Whotte, (collectively referred to as "Mr. Whotte") filed a personal injury lawsuit against IPCO seeking damages and loss of consortium respectively. Mr. Whotte claimed he sustained chemical burns to his feet and ankles while he was constructing scaffolding inside a "recovery boiler" at the IPCO Campi Mill in Natchitoches Parish.

The mill manufactures paper products. The paper manufacturing process requires the use of a recovery boiler to capture by-products. Once a year, IPCO is required to shut down the recovery boiler for maintenance, which includes cooling, washing, and testing the integrity of the component parts. Every five years, IPCO is required to conduct a more extensive cleaning, maintenance, and testing of the recovery boiler to maintain it in safe working order. This extensive five year maintenance work requires the building of scaffolding inside the recovery boiler. The scaffolding allows other IPCO sub-contractors and specialty companies

charged with hydroblasting, conducting nondestructive testing, and inspection of the floor tubing to complete the required inspection process.

Mr. Whotte was an employee of Turner Industries Group, L.L.C (Turner), one of the IPCO subcontractors hired to complete the maintenance work on the recovery boiler. In preparation for another subcontractor to begin the inspection of the floor tubing, Mr. Whotte began construction of the scaffolding inside the recovery boiler. Almost immediately, he began to experience his feet burning, which prompted his exit from the recovery boiler and his immediate transport to the emergency room for treatment of chemical burns on his feet and ankles.

IPCO filed a motion for summary judgment seeking to dismiss both claims on the ground that it was immune from tort liability under the Louisiana Workers' Compensation Act. A 2009 contract between Turner, Mr. Whotte's direct employer, and IPCO was extended to 2012 and identified IPCO as Mr. Whotte's statutory employer. In addition to the 2009 contract, extended to 2012, a 2012 purchase order specifically authorizing Turner's work on the recovery boiler on the day of the accident contained language classifying Mr. Whotte as a statutory employee of IPCO.

At the hearing on IPCO's motion for summary judgment, the trial court reviewed the memoranda submitted by counsel and after oral argument, rendered reasons for ruling on the record. The trial court found that Mr. Whotte was the statutory employee of IPCO at the time of the accident and dismissed the claims of Mr. and Mrs. Whotte with prejudice. A judgment memorializing the trial court's reasons for ruling was signed on September 26, 2014, and timely appealed by the Whottes.

2

## ASSIGNMENT OF ERROR

On appeal, the Whottes assert the following assignment of error:

> The trial erred by granting International Paper's motion for summary judgment because the contract on which IP relies to establish tort immunity as a statutory employer has none of the required hallmarks justifying immunity. Instead, the contract itself violates the Louisiana Worker's Compensation Act since, on the one hand, it seeks to establish IP as a statutory employer, but on the other seeks to completely shield IP from any liability or responsibility as an employer. The contract, if implemented as IP suggests and as ordered by the trial court, would violate not only the Louisiana Worker's Compensation Act but applicable provisions of the Louisiana Constitution.

## LAW AND DISCUSSION

### *Standard of Review*

It is well settled that Louisiana appellate courts review summary judgments *de novo*, applying the same standard to the matter as that applied by the trial court. *See Smitko v. Gulf S. Shrimp, Inc.*, 11-2566 (La. 7/2/12), 94 So.3d 750. The trial court is required to render summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B)(2). Although amended multiple times over the last three years, summary judgment proceedings are favored by law and provide a vehicle by which "the just, speedy, and inexpensive determination of an action may be achieved." La.Code Civ.P. art. 966(A)(2).

In 1997, the legislature enacted La.Code Civ.P. art. 966(C)(2), which clarified the burden of proof in summary judgment proceedings and provides:

> The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's

burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.

When a motion for summary judgment is made and supported, the adverse party may not rest on the allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. La.Code Civ.P. art. 967(B). "A fact is 'material' when its existence or nonexistence may be essential to [a] plaintiff's cause of action under the applicable theory of recovery." *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512, p. 27 (La. 7/5/94), 639 So.2d 730, 751. "[F]acts are material if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute." *Id.* (quoting *S. La. Bank v. Williams,* 591 So.2d 375, 377 (La.App. 3 Cir. 1991), *writ denied,* 596 So.2d 211 (La.1992)).

In determining whether a fact is material, we must consider the substantive law governing the litigation. *See Davenport v. Albertson's, Inc.*, 00-685 (La.App. 3 Cir. 12/6/00), 774 So.2d 340, *writ denied*, 01-73 (La. 3/23/01), 788 So.2d 427. The substantive law governing this litigation requires the examination of the provisions of La.R.S. 23:1032 and La.R.S. 23:1061, which provide the requirements for a finding of statutory employer status.

*Applicable Law*

Louisiana Revised Statutes 23:1032(A)(1)(a) provides that, with the exception of intentional acts, the remedies provided to a worker under the Louisiana Workers' Compensation Act are "exclusive of all other rights, remedies,

4

and claims for damages . . . against his employer, *or any principal* or any officer, director, stockholder, partner, or employee of such employer or principal, for said injury, or compensable sickness or disease." (Emphasis added.)

Louisiana Revised Statutes 23:1032(A)(1)(b) discusses the exclusivity of workers' compensation and the concept of the statutory employer, and states, "[t]his exclusive remedy *is exclusive of all claims*, including any claims *that might arise against* his employer, or *any principal* or any officer, director, stockholder, partner, or employee of such employer or principal under any dual capacity theory or doctrine." (Emphasis added.) Louisiana Revised Statutes 23:1032(A)(2) defines a principal:

> For purposes of this Section, the word "principal" shall be defined as any person who undertakes to execute any work which is a part of his trade, business, or occupation in which he was engaged at the time of the injury, *or which he had contracted to perform and contracts with any person for the execution thereof.*

(Emphasis added.)

Louisiana Revised Statutes 23:1061 discusses the protections afforded to a "principal" and provides:

> A.(1) Subject to the provisions of Paragraphs (2) and (3) of this Subsection, *when any "principal" as defined in R.S. 23:1032(A)(2), undertakes to execute any work, which is a part of his trade, business, or occupation and contracts with any person, in this Section referred to as the "contractor", for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal, as a statutory employer, shall be granted the exclusive remedy protections of R.S. 23:1032* and shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed. For purposes of this Section,

work shall be considered part of the principal's trade, business, or occupation if it is an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or services.

(2) A statutory employer relationship shall exist whenever the services or work provided by the immediate employer is contemplated by or included in a contract between the principal and any person or entity other than the employee's immediate employer.

(3) Except in those instances covered by Paragraph (2) of this Subsection, a statutory employer relationship shall not exist between the principal and the contractor's employees, whether they are direct employees or statutory employees, *unless there is a written contract between the principal and a contractor which is the employee's immediate employer or his statutory employer, which recognizes the principal as a statutory employer. When the contract recognizes a statutory employer relationship, there shall be a rebuttable presumption of a statutory employer relationship between the principal and the contractor's employees, whether direct or statutory employees. This presumption may be overcome only by showing that the work is not an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or services.*

B. *When the principal is liable to pay compensation under this Section, he shall be entitled to indemnity from any person who independently of this Section would have been liable to pay compensation to the employee or his dependent, and shall have a cause of action therefor.*

(Emphasis added.)

In *Allen v. State ex rel. Ernest N. Morial-New Orleans Exhibition Hall Authority*, 02-1072, pp. 5-6, (La. 4/9/03), 842 So.2d 373, 377-78 (footnote omitted)(citations omitted), the supreme court explained the reason for the legislative creation of the statutory employer doctrine:

Workers' compensation legislation was enacted in the early decades of the twentieth century, not to abrogate existing tort remedies that afforded protection to workers, but to provide social insurance to compensate victims of industrial accidents because it was widely believed that the limited rights of recovery under tort law were inadequate to protect these individuals. The legislation reflects a compromise between the competing interests of employers and employees: the employer gives up the defense it would otherwise

6

enjoy in cases where it is not at fault, while the employee surrenders his or her right to full damages, accepting instead a more modest claim for essentials, payable regardless of fault and with a minimum of delay.

The legislatures that adopted the early workers' compensation acts feared that employers would attempt to circumvent the absolute liability those statutes imposed by interjecting between themselves and their workers intermediary entities which would fail to meet workers' compensation obligations. To assure a compensation remedy to injured workers, these legislatures provided that some principals were by statute deemed, for purposes of liability for workers' compensation benefits, the employers of employees of other entities. The legislative approaches to what is commonly referred to as the "statutory employer" doctrine varied.

Louisiana adopted a broad version of the statutory employer doctrine. The Louisiana Act expressly extends the employer's compensation obligation and its corresponding tort immunity to "principals."

Under the cited provisions of the Louisiana Workers' Compensation Act, for IPCO to be considered Mr. Whotte's statutory employer, the contract between IPCO, as "principal," and Turner, as Mr. Whotte's "immediate employer," must contain language which "recognizes the principal as a statutory employer." *See* La.R.S. 23:1061(A)(3).

*Contractual Relationship Between IPCO and Turner*

In support of its motion for summary judgment, IPCO submitted the affidavit of Kim Sanders, IPCO's Purchasing & Stores Manager. Ms. Sanders' affidavit identified as "true and correct" copies of the February 19, 2009 contract between IPCO and Turner (2009 Contract), the Amendment to the 2009 Contract dated December 9, 2011, extending the term of the 2009 Contract from December 31, 2011, to May 31, 2012, (2009 Contract/2012 Extension), and the Purchase Order #6293222 dated March 12, 2012, which specifically hired Turner to erect the scaffolding in the recovery boiler (2012 Purchase Order).

7

The pertinent portions of each of the documents identified in Ms. Sanders' affidavit are cited below. In each document, IPCO is designated as the COMPANY and Turner is designated as the CONTRACTOR:

The 2009 Contract Extension terminating on May 31, 2012 stated:

ARTICLE 3: <u>INDEPENDENT CONTRACTOR</u>: . . . COMPANY and CONTRACTOR (as direct employer) agree that it is their intention to recognize COMPANY as the statutory employer of CONTRACTOR's employees while CONTRACTOR's employees are providing work for COMPANY under the Agreement and hereby confirm that COMPANY is the statutory employer of CONTRACTOR's direct and statutory employees pursuant to La. R.S. Section 23:1061(A)(3). COMPANY and CONTRACTOR acknowledge that the services required of CONTRACTOR under this AGREEMENT (and all such predecessor agreements) are part of COMPANY's trade, business or occupation and are an integral part of and/or essential to COMPANY's ability to generate its goods, products, and services.

. . . .

ARTICLE 5: <u>COSTS TO BE REIMBURSED</u>: COMPANY shall reimburse CONTRACTOR for all reasonable costs paid directly by CONTRACTOR and incurred in the proper completion of the work, including the following costs. . . .

. . . .

(j.) Premiums on insurance policies required by this AGREEMENT. The cost for these premiums is that which is included in the cost plus labor breakdown sheets.

ARTICLE 9. <u>INSURANCE-HOLD HARMLESS-CLAIMS</u>:

1. <u>Insurance to be carried by CONTRACTOR</u>. During the term of the AGREEMENT, CONTRACTOR shall maintain primary insurance coverage listed below with insurers satisfactory to the COMPANY:

(a) <u>Workers' Compensation and Employer's Liability</u>. Workers' Compensation as required by statute, and if applicable, liability under the <u>Federal Longshoremen and Harbor Workers Act</u>[,] the <u>Death on the High Seas Act</u>[, and] <u>Jones Act</u>"). . . .

8

2.    COMPANY       Named    as    an    Additional Insured/CONTRACTOR'S Insurance Certificates. CONTRACTOR shall cause COMPANY to be named as an Additional Insured under CONTRACTOR' S Commercial General Liability insurance required under this AGREEMENT, and certificate(s) (to be followed by endorsement(s) to the policy by the carrier(s)) evidencing this fact shall be submitted to COMPANY and must be approved by COMPANY before work commences under this AGREEMENT. . . . COMPANY shall be named as additional insured and granted waiver of subrogation to the extent necessary to provide coverage under CONTRACTOR'S insurance for the liabilities assumed by CONTRACTOR under the indemnity provisions of this agreement.

3.    INDEMNITY. . . . If any person makes a claim for any such damage or injury (including death resulting therefrom) as herein above described, the CONTRACTOR agrees to indemnify and save harmless the COMPANY, its agents, servants and employees from and against any and all loss, damage, injury or expense including reasonable attorney's fees that the COMPANY may sustain as a result of any such claims, and the CONTRACTOR agrees to assume, on behalf of the COMPANY, the defense of any action at law or in equity, which may be brought against the COMPANY upon such claim and to pay on behalf of the COMPANY upon its demand, the amount of any judgment that may be entered against the COMPANY in any such action. . . .

The 2012 Purchase Order dated March 12, 2012, #6293222, hired Turner to erect scaffolding in the recovery boiler. The 2012 Purchase Order confirmed that the scaffolding in the recovery boiler provided by Turner, the Contractor, was essential to IPCO's, the Company's, ability "to generate its goods, products, and/or services," and provided:

IT IS FURTHER AGREED between COMPANY and CONTRACTOR that the work being performed by CONTRACTOR is part of COMPANY's trade, business, or occupation, and the work performed by CONTRACTOR pursuant to this agreement is an integral part of and essential to the ability of COMPANY to generate its goods, products, and/or services. Accordingly, pursuant to La. R.S. 23:1061, COMPANY is the statutory employer of CONTRACTOR's employees, including either direct or statutory employees, performing work under this agreement.

The affidavit of Bill Landry, the Senior Project Manager at IPCO's Campti Mill, was submitted by IPCO in connection with the 2012 Purchase Order. Mr.

9

Landry attested that the scaffolding Mr. Whotte was building at the time of the accident was essential to the required inspection and cleaning process, without which IPCO's ability to generate its paper products would be adversely affected.

*Application of Louisiana Revised Statutes 23:1032(A)(2) and Louisiana Revised Statutes 23:1061*

In its reasons for ruling, the trial court found that at the time of the accident, IPCO was the statutory employer of Mr. Whotte. The trial court's ruling was based on the contracts between IPCO and Mr. Whotte's employer, Turner, which specifically named IPCO as a statutory employer of the Turner employees, including Mr. Whotte. The contracts also explicitly stated that work performed by Turner under the contracts, including the 2012 Purchase Order, was an "integral part of and essential to the ability of [IPCO] to generate its goods, products, and/or services." The trial court determined that the initial 2009 Contract/2012 Extension and the 2012 Purchase Order for the scaffolding construction that resulted in Mr. Whotte's injuries comported with the requirements necessary in La.R.S. 23:1032(A)(2) and La.R.S. 23:1061 to create the presumption that IPCO, as a "principal," was Mr. Whotte's statutory employer.

*Mr. Whotte's Opposition*

In opposition to IPCO's motion for summary judgment, Mr. Whotte argued that the contracts between IPCO and Turner "violate the requirements of the Louisiana Workers' Compensation Act since, on one hand, it seeks to establish IP [IPCO] as a statutory employer, but on the other seeks to completely shield IP [IPCO] from any liability or responsibility as an employer."

First, under the terms of the contracts at issue, plaintiffs argue IPCO did not have an obligation to pay workers' compensation benefits to Mr. Turner.

However, paragraph (j) contained in the 2009 Contract provided that the cost of the premiums for the workers' compensation insurance coverage afforded by Turner to Mr. Whotte would be reimbursed by IPCO to Turner. Therefore, IPCO was contractually obligated to pay the premiums for the workers' compensation benefits paid to Mr. Whotte by Turner.

Second, Mr. Whottle argues that IPCO is not allowed to make a claim for contractual indemnification from Turner for the payments made to him. Louisiana Revised Statutes 23:1031(B) clearly provides the opposite is true:

> In case any employee for whose injury or death payments are due is, at the time of the injury, employed and paid jointly by two or more employers subject to the provisions of this Chapter, such employers shall contribute to such payments in proportion to their several wage liabilities to the employee; but nothing in this Section shall prevent any arrangement between the employers for different distribution, as between themselves, of the ultimate burden of such payments. If one or more but not all the employers are subject to this Chapter, then the liability of such of them as are so subject shall be to pay that proportion of the entire payments which their proportionate wage liability bears to the entire wages of the employee; *but such payment by the employers subject to this Chapter shall not bar the right of recovery against any other joint employer.*

(Emphasis added.)

In *Stewart v. Boh Bros. Construction. Co.*, 13-193, pp. 6-7 ( La.App. 5 Cir 10/9/13), 128 So.3d 398, 402, the fifth circuit affirmed the application of La.R.S. 23:1031(B) and provided:

> Neither a direct employer nor a statutory employer may, as to the injured worker, *contract* away its solidary obligation: "No contract, rule, regulation, or device whatsoever shall operate to relieve the employer, in whole or in part, from any liability created by this Chapter except as herein provided." La.R.S. 23:1033. However, the statutory employer and the direct employer are not prohibited from contracting *as between themselves* rights of contribution or indemnification. *See, e.g.*, La.R.S. 23:1031(B) and 1063 (A).

(Other citations omitted.)

11

Plaintiffs urge the application of *Prejean v. Maintenance Enterprises, Inc.*, 08-364 (La.App. 4 Cir. 3/25/09), 8 So.3d 766, *writ denied*, 09-892 (La. 6/26/09), 11 So.3d 496. *Prejean*, however, was distinguished in *Stewart*, 128 So.3d at 403, which stated that "contractual language that only modifies the obligations or regulates the rights and responsibilities among the obligors (the statutory and direct employers) as between themselves, but not towards the obligee, the injured worker, is permissible."

Also cited in support of Mr. Whotte's position was *Smith v. Brown*, 11-1749 (La.App. 1 Cir. 8/15/12), 97 So.3d 1186, *writ denied*, 12-15 (La. 11/16/12), 102 So.3d 39. The *Smith* case is factually distinguishable from the facts of this case, as discussed in *Stewart*, 128 So.3d at 404, which provided:

> In *Smith,* the claimant, an employee of Formosa, received workers' compensation benefits from his direct employer, Formosa, after being injured in a workplace accident at Formosa caused in part by the actions of Brown, the employee of a contract labor provider, Harmony. Smith sued Brown and Harmony in tort; Formosa and its workers' compensation carrier intervened in the suit to recover, under the indemnity provision in the contract between Formosa and Turner relied upon by plaintiff here, all workers' compensation benefits Formosa paid to Smith, Formosa's own direct employee. Smith later voluntarily dismissed his claims against Brown and Harmony's successor, Turner, with prejudice, leaving only the intervention claim outstanding. On Brown and Turner's motion for summary judgment, the court granted the motion, dismissing Formosa's intervention, finding the indemnity provision in the contract between Formosa and Turner against public policy, because if enforced under these facts, it shielded Formosa, the employer, from liability for workers' compensation benefits to its own direct employee.

Thus, based on its facts, *Smith* is distinguishable from the facts and contractual language in this case. The similar contract language and facts of *Stewart* provide that IPCO and Turner were allowed under the terms of the applicable statutes and jurisprudence to agree that Turner would indemnify IPCO as the principal for any compensation paid to Mr. Whotte without jeopardizing

12

IPCO's statutory employer status. The trial court correctly determined the presumption contained in La.R.S. 1061(A)(3) was applicable, and IPCO qualified as Mr. Whotte's statutory employer based on the language in the contracts between IPCO and Turner.

*Louisiana Revised Statutes 23:1061(3)*

The presumption of IPCO's statutory employer status may only be overcome "by showing that the work is not an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or services." La.R.S. 23:1061(3)

In order to defeat IPCO's motion for summary judgment, Mr. Whotte was required to present evidence that his work as a "carpenter" had no connection to IPCO's business of manufacturing paper products. In his deposition, Mr. Whotte admitted that the "recovery boiler" fueled the IPCO plant and required cleaning for the boiler to function properly. The explanation of the IPCO cleaning process, documented in the affidavit of Mr. Landry, provided that the scaffolding constructed by Mr. Whotte was required to allow access to the boiler for the crews to perform the necessary cleaning operation and to inspect the tubing on the boiler floor.

The trial court correctly determined that no evidence was presented in opposition to IPCO's motion for summary judgment sufficient to overcome the presumption that IPCO was Mr. Whotte's statutory employer. Without the necessary evidentiary support for his arguments, Mr. Whotte would not be able to carry his burden at trial. Based on the foregoing, we affirm the trial court's judgment dismissing with prejudice the claims of Garred and Megan Whotte.

***Constitutionality of Louisiana Revised Statutes 23:1061(A)(3)***

The trial court also found in its reasons for judgment that the relevant portions of La.R.S.23:1061(A)(3) were constitutional based upon the holding in the fifth circuit case of *Johnson v. Motiva Enterprises, LLC*, 13-305 (La.App. 5 Cir. 10/30/13), 128 So.3d 483, *writ denied*, 13-2791 (La. 2/14/14), 132 So.3d 966. In *Johnson*, the court held that the 1997 statutory amendment, Subpart (A)(3) effective June 17, 1997, was constitutional. However, this issue is not before us on appeal. The trial court's Judgment of September 26, 2014 contains no ruling on the constitutionality of La.R.S. 23:1061(A)(3), and this court's review is limited to the judgment of a trial court. *Woodley v. Lucksinger*, 09-571 (La. 4/1/11), 61 So.3d 507.

## CONCLUSION

For the foregoing reasons, the trial court's September 26, 2014 judgment dismissing the claims of Garred Whotte and Megan Whotte against International Paper Company is affirmed. All costs on appeal are assessed to Garred Whotte and Megan Whotte.

**AFFIRMED.**

**GARRED WHOTTE, ET AL.**

**VERSUS**

**INTERNATIONAL PAPER COMPANY**


**COOKS, J., concurring.**

I agree with the majority that plaintiffs' argument asserting his work as a carpenter had no connection to IPCO's business is without merit. The scaffolding constructed by Mr. Whotte was required to access the boiler to perform the necessary cleaning process.

However, I find it of particular relevance that IPCO's contract releases IPCO pursuant to its indemnity provision from responsibility for the payment of "compensation claims" filed by Turner's employees. Specifically, Article 9 of IPCO's contract contains a broad indemnity provision, which reads as follows:

> The CONTRACTOR assumes the defense and the entire responsibility and liability for any and all damage or injury of any kind or nature whatsoever (including resulting death) to all persons, whether employed by the CONTRACTOR or otherwise. . . If any person makes a claim for any such damage or injury (including death resulting therefrom) as hereinabove described, the CONTRACTOR agrees to indemnify and save harmless the COMPANY, its agents, servants and employees from any and all loss, damage, injury or expense including reasonable attorney fees that the COMPANY may sustain as a result of any such claims, and the CONTRACTOR agrees to assume on behalf of the COMPANY, the defense of any action at law or in equity which may be brought against the COMPANY upon such claim and to pay on behalf of the COMPANY upon its demand, the amount of any judgment that may be entered against the COMPANY in any such action. In any suit or claim by COMPANY, CONTRACTOR hereby expressly waives any immunity from suit by COMPANY which might otherwise be conferred by the workers compensation laws  of any jurisdiction in which may preclude enforcement of the indemnification clause of the agreement by

COMPANY, and CONTRACTOR further agrees to pay any reasonable attorney's fees incurred by the COMPANY in securing compliance with the provisions of this indemnification agreement . . .

This article of the contract effectively puts all responsibility on Turner. I do not find the policy behind La.R.S. 23:1061 allows the principal to force the subcontractor to indemnify the principal for its *own negligence*. Statutory employer status should not be given where the entire burden of responsibility is placed on the subcontractor, contrary to the statute which places liability on the principal who seeks the benefit of the Act. The claimant argues to be a statutory employer the principal must accept responsibility, but in this case that responsibility is specifically contracted out and the responsibility placed solely on the subcontractor, even for the clear negligence of IPCO, the principal. Section B of La.R.S. 23:1061 states that you can only seek indemnity from a responsible party, but IPCO's contract allows it to seek indemnity from the subcontractor who is not responsible for the accident. However, whether the principal can force the subcontractor to indemnify it for its own negligence is a question which can only be raised by the subcontractor – only the principal and subcontractor are parties to the contract and the "terms" in it that may be contrary to the Act do not defeat the claimant's right to assert his claim directly against the principal. For this reason, I will concur in the result reached by the majority.